The State appeals from the trial court's order granting defendants' motion to suppress videotapes of dog fighting which police officers seized from Roderick Shelton's home. Shelton was indicted for (1) knowingly being present as a spectator where preparations were being made for the fighting of dogs or aiding and abetting another with the intent to be present at dog fighting, (2) possessing or training dog(s) with the intent of fighting the dog(s), (3) causing a dog to fight with another dog for the purpose of amusement or gain, and (4) permitting the use of his premises for the possession, keeping or training of dogs with the intent to engage the dogs in the fighting of other dogs, violations of § 3-1-29, Ala. Code 1975. Theron Thompkins was indicted on one count for knowingly being present as a spectator where preparations were being made for the fighting of dogs, a violation of § 3-1-29, Ala. Code 1975. Shelton and Thompkins filed separate motions to suppress all of the evidence seized from Shelton's residence. (C. 12, 24-25.) After a hearing, the trial court granted the motion in part as to two video tapes. (R. 111.) The state contends on appeal that the trial court erred in granting the motion to suppress in part, arguing that (1) the trial court erred in holding that the Captain Mosby did not have probable cause to seize the videotape, and (2) the defendants did not have standing to challenge the warrantless search of the video camera because, the State argues, they did not have a possessory interest in the video camera. *Page 475 
 FACTS
The following evidence was elicited at the hearing on the motion to suppress. On the night of June 3, 1997, an anonymous caller complained of dog fighting in the basement of Shelton's residence. Officer Young and Officer Finney responded to the complaint. When they arrived at Shelton's residence, they went around to the back of the house to look for a basement. After Officer Young did not see a basement, he went around front and knocked on the door. However, no one answered the door. Officer Finney asked Young to come around to the side of the house because she heard commotion inside of the house. (R. 4.) Young heard "intense growling that a dog does when it sounds like they're after something or trying to tear something up or fighting other dogs." (R. 12.) The commotion was coming from under the house in a crawl space that had been dug out from the basement. Young knocked on the door again and someone answered. The person said that he was not the owner of the house and shut the door. (R. 7.) Meanwhile, Officer Finney called Young to the side of the house because she noticed a hole in the side of the house. Through this hole, Officer Young observed a dog on a rope leash jumping up and down. Then, he observed peoples' feet walking up the stairs and the light was turned off. (R. 8-9.) At this point, several other officers arrived. One of the officers heard someone open the back door. The officers went around to the back of the house where they saw two or three dogs being let out of the residence into the fenced back yard, which had individual pens. Eventually, Shelton, the owner of the house, answered the front door. Young explained to Shelton the nature of the call. Shelton said that everyone inside was playing cards. When Officer Young asked if he could come inside and look around, Shelton repeatedly explained that nothing was happening inside the house. (R. 13-14.) Then, Shelton closed the door.
Lieutenant Mosby, now Captain Mosby, arrived at the Shelton residence and Officer Young explained the situation to her. (R. 14.) Mosby knocked on the door and spoke with Shelton. Mosby asked if she could come inside the house. Shelton allowed Mosby inside his house, closed the door behind her, and locked it. (R. 39.) A few seconds later, Mosby opened the door and asked Officer Young and Sergeant Mitchell to come inside with her. (R. 39-40.) Shelton cooperatively showed them around the upstairs of the house and then the basement. When they went downstairs, Mosby saw Shelton pick up something, run around the side of the stairs, and place it into a dog carrier. Mosby retrieved a video camera from inside the dog carrier. (R. 43.) She asked Shelton if the video camera belonged to him and he responded no. Shelton said he did not know who owned the video camera. Mosby looked around the basement and saw "some yellow carpet looking-like stuff on the floor and an old car seat, or something, down there." Mosby thought "[i]t looked like what they had been saying was going because there was also some dog feces on the floor over there and some dog carriers down there." (R. 44.) During her testimony, the trial judge asked Mosby if she believed there was probable cause at the time she seized the video camera. She responded "I did not know exactly what was going on. I was — — at that time I was still trying to investigate to see exactly what was going on." (R. 54.) Mosby testified that the basement "smelled gross" so she went back upstairs. She asked everyone in the house if they owned the video camera and everyone responded no. Mosby asked if she could take the video camera and everyone, including Shelton, said she could take it. (R. 44-45.) The officers took the video tape to a news crew, who was outside the Shelton residence. They watched the tape on the news crew's equipment. The videotape revealed dog fighting and the people on the videotape were wearing the same clothes as the people inside Shelton's residence. (R. 46-47.) *Page 476 
Everyone inside Shelton's house was arrested. The officers obtained a search warrant and returned the next day to search Shelton's house.
At the suppression hearing, Shelton testified that Mosby asked him if she could search his house because there was a report of a dog fighting at his residence. Shelton responded "[w]ell, ain't no dog fighting going on here, you know. We ain't doing nothing but playing cards." (R. 60.) Shelton then testified that the officers "barged" inside his house. "You know, they done come in the house already without . . . my permission." (R. 60.)
At the close of the hearing, the trial court stated as follows:
 "Well, this is — this is my ruling. I'm going to find that Officer Young went out there to answer a fight — I mean a complaint about a dog fight. He got out there. He observed the presence of dogs in the backyard. He observed a dog in the basement through the, I guess you'd call it the vent hold in the foundation [of the] wall, that apparently someone had on a leash. He heard barking. He heard growling. Captain Mosby arrives on the scene and she's admitted in the house voluntarily with consent. She looks through the house. She sees evidence of the presence of dogs. I don't necessarily think that equates to dog fighting because it's legal to have the dogs. It's legal to own them and raise them. It's just illegal to fight them or to participate in dog fights.
 "When she said that she took the video out of the camera because she was still trying to determine what was going on out there, that tells me that in her mind at least, she didn't have probable cause to seize the evidence. She's still in the investigative stage. She's still trying to determine what's going on.
 "I'm going to find that there was no probable cause to seize the tape. I'm going to find there's no probable cause to seize the second tape. However, I'm not going to suppress anything that was retrieved as a result of the search warrant because from what I've read in the affidavit, there's nothing in there that at least didn't give them probable cause to come back with a warrant and execute it based on what they saw in the house, because there's nothing in there about what was on the tapes."
(R. 111-12.)
In reviewing a trial court's decision to grant a motion to suppress, we apply a clearly erroneous standard of review when the evidence is in dispute. See Ex parte Matthews, 601 So.2d 52 (Ala. 1992); Barnes v. State, 704 So.2d 487 (Ala.Cr.App. 1997). This court "must make all reasonable inferences and credibility choices in support of the trial court's ruling." Allen v. State,689 So.2d 212, 216 (Ala.Cr.App. 1995). The trial court's decision concerning conflicting evidence given at a suppression hearing is binding upon this court and will not be disturbed "unless it is palpably contrary to the weight of the evidence." State v. Smith,715 So.2d 925, 927-28 (Ala.Cr.App. 1998).
The State argues that the trial court erred in granting the defendants' motion to suppress the videotape found in the video camera. In support of its position, the State maintains that the officers properly seized the evidence because the officer had probable cause coupled with exigent circumstances.
 "`This court has long held that warrantless searches are per se unreasonable, unless they fall within one of the recognized exceptions to the warrant requirement. See, e.g., Chevere v. State, 607 So.2d 361, 368 (Ala.Cr.App. 1992). These exceptions are: (1) plain view; (2) consent; (3) incident to a lawful arrest; (4) hot pursuit or emergency; (5) probable cause coupled with exigent circumstances; (6) stop and frisk situations; and (7) inventory searches. Ex parte Hilley, 484 So.2d 485, 488 (Ala. 1985); Chevere, supra, 607 So.2d at 368.'" *Page 477 
State v. Mitchell, 722 So.2d 814, 820 (Ala.Cr.App. 1998). "`The burden is on the State to make such a showing that the warrantless search meets an exception.'" Woods v. State, 695 So.2d 636, 640
(Ala.Cr.App. 1996), quoting Sawyer v. State, 456 So.2d 114, 115
(Ala.Cr.App. 1984).
In order to decide whether the videotape was lawfully seized, we must determine whether the officer had probable cause at the time she seized the evidence. It is evident from the record that the trial court gave great credence to the officer's testimony. However, "`[b]ecause the test for determining probable cause is an objective and not a subjective test, this court may "`find probable cause in spite of an officer's judgment that none exists.'"'" Woods, 695 So.2d at 640, quoting Hopkins v.State, 661 So.2d 774, 779 (Ala.Cr.App. 1994); Hutcherson v.State, 677 So.2d 1174 (Ala.Cr.App. 1994).
 "`Whether there is probable cause of merit a warrantless search and seizure is to be determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983). "Probable cause exists where all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched." Sheridan v. State, 591 So.2d 129, 130 (Ala.Cr.App. 1991).'"
Woods v. State, 695 So.2d 636, 640 (Ala.Cr.App. 1996).
Under the facts of this case, Captain Mosby clearly had probable cause to seize the videotape. When Captain Mosby arrived at the scene, Officer Young briefed her of the situation. Specifically, Young informed her that an anonymous caller complained that dogs were fighting in the basement at Shelton's residence. He also explained to Mosby that he heard sounds of dog fighting, saw a dog on a leash jumping up and down, saw feet walking up the stairs, and the downstairs light go off. Other officers saw several dogs being let out the back of the house. Mosby then spoke to Shelton, who let her inside his home. When Shelton took the officers down stairs she saw Shelton pick up something, run around the side of the stairs, and place it into a dog carrier. Mosby followed him and retrieved a video camera from the dog carrier and asked Shelton if it belonged to him. He responded no. As Mosby looked around the basement, she saw a yellow carpet, an old car seat, dog carriers, and dog feces. Captain Mosby testified that the basement smelled "gross." Considering the totality of the circumstances, we hold that Captain Mosby had probable cause to believe that dogs had been fighting at Shelton's residence. See Woods v. State,695 So.2d 636 (Ala.Cr.App. 1996).
Moreover, Captain Mosby had sufficient reason to believe that the video camera contained contraband. First, as she was walking down the basement steps, Shelton grabbed the video camera and placed it inside the dog carrier. His actions suggested he was trying to hide something. Second, the video camera was set up the basement where Captain Mosby believed dogs had just been fighting. (R. 44.) Therefore, considering Shelton's conduct, the environment in the basement, and the information Mosby received from Officer Young when she arrived at the scene, Mosby had a good reason to believe that the video camera contained contraband.
Furthermore, exigent circumstances existed. "`Exigent circumstances exist whenever an object to be searched is mobile or moveable. . . .'" Woods, 695 So.2d at 641, quoting Day v.State, 539 So.2d 410, 414 (Ala.Cr.App. 1988). Shelton could have moved or disposed of the tapes and other evidence that was obtained pursuant to the search warrant if Captain Mosby did not conduct an immediate search. We hold that, based on the totality of the circumstances, probable cause combined with exigent circumstances existed and Captain Mosby was justified in *Page 478 
seizing the video tape from the video camera. The trial court's decision was palpably contrary to the weight of the evidence.See State v. Smith, 715 So.2d 925
(Ala.Cr.App. 1998).
Because of our resolution of the first issue, we will not discuss the second issue presented by the State.
We therefore hold that the trial court erred in suppressing the videotape found in the video camera. Accordingly, the trial court's order granting the motion to suppress is reversed, and this cause is remanded to the trial court.
REVERSED AND REMANDED.
Long, P.J., and McMillan, Baschab, and Fry, JJ., concur.