The State of Alabama appeals from the trial court's order suppressing evidence of marijuana obtained after a traffic stop of Steven Edward Smith's automobile.
At the suppression hearing, the State presented testimony from Cpl. Robert Hyde, a narcotics investigator with the Clarke County Sheriff's Department, who was working in cooperation with an area drug task force. Cpl. Hyde testified that on the evening of January 8, 1998, he was on routine patrol in Thomasville when he noticed a white Camaro automobile traveling slowly along Bashi Road. Cpl. Hyde pulled behind the Camaro and began to follow it. Cpl. Hyde stated that he followed the car on Bashi Road for approximately one to two miles, during which *Page 1171 
time, he said, he observed the car "kind of easing off the edge of the roadway . . . a couple of times." (R. 5-7.) As he followed the car, Cpl. Hyde drew close enough to see its license plate number. Cpl. Hyde stated that as soon as he saw the license plate number — "MAR11-23" — he recalled that, several days earlier, a Thomasville police officer had informed him that he had seen this same car in an area of town "frequented by known drug dealers" and had also seen the car's driver in the company of "some folks that are known crack addicts." (R. 6.) Cpl. Hyde then pulled the car over on Bashi Road.
Cpl. Hyde testified that his decision to pull the car over was based on the "erratic" manner in which it was being operated; he stated that because the car was traveling so slowly and was running off the edge of the road, he suspected that its driver "might have been impaired or possibly have been under the influence of either narcotics or alcohol" or that the driver may have been "having some kind of health problem." (R. 8-9; 15.) According to Cpl. Hyde, the information he had received earlier from the Thomasville police officer about the car and its driver did not play a part in his decision to stop the car.
The car's driver and sole occupant was Steven Edward Smith. Cpl. Hyde testified that after Smith pulled over, he walked up to Smith's car and Smith got out and met him near the rear of the vehicle. At that point, Cpl. Hyde told Smith that he had stopped him because he was "weaving" and that he thought he "might be drinking." (R. 9.) He then asked Smith to produce his driver's license. Cpl. Hyde testified that Smith initially pulled a "reporter's card" out of his wallet, and that when he again told Smith that he wanted to see his driver's license, Smith replied, "the State's got it." (R. 9-10.)
Cpl. Hyde then obtained Smith's name and date of birth for the purpose of running a check through the National Crime Information Center computer. Cpl. Hyde testified that as he stood next to Smith's car, he could smell the odor of burnt marijuana emanating from the car, through the open driver's-side window. Cpl. Hyde stated that he then shined his flashlight into the car and saw, between the driver's seat and the passenger's seat, the top of a small plastic bag. Cpl. Hyde walked back to his own car, ran a check using Smith's name and date of birth, and learned that Smith had had his driver's license revoked and that there were two arrest warrants — one in Thomasville and one in Marengo County — outstanding on Smith for failure to appear in court. At that time, Linzey Coston, an officer with the Thomasville Police Department, was dispatched to the scene with one of the warrants for Smith's arrest.
After Officer Coston arrived (approximately five minutes later), Cpl. Hyde asked Smith if he would consent to a search of his car. Both Cpl. Hyde and Officer Coston (who also testified at the suppression hearing) stated that Smith gave Cpl. Hyde his verbal consent to search the car. In searching the car, Cpl. Hyde found 6.78 grams of marijuana in the plastic bag between the driver's seat and the passenger's seat and found various items of drug paraphernalia in the ashtray and inside a sock that was under the driver's seat. Cpl. Hyde placed Smith under arrest for possession of marijuana.
Cpl. Hyde stated that Smith was not charged with any traffic offense. (He was specifically asked whether Smith was charged with reckless or "careless" driving or with driving under the influence of a controlled substance, and stated that he was not.) According to Cpl. Hyde, it was "not unusual" not to pursue charges for *Page 1172 
traffic offenses where a more serious offense is discovered after a driver has been pulled over. (R. 27.) A subsequent check revealed that Smith had a prior conviction for possession of marijuana. Based on the evidence seized from the car, a grand jury indicted Smith for first-degree possession of marijuana and for possession of drug paraphernalia.
Smith testified in his own behalf at the suppression hearing. He maintained that he was not driving erratically before he was stopped and that he did not remember running off the edge of the road. Smith stated that he began to drive slowly on Bashi Road only after Cpl. Hyde began to follow him closely. Smith denied that Cpl. Hyde ever asked for, or received, his consent to search his car after he was pulled over. According to Smith, after Officer Coston arrived at the scene, Cpl. Hyde told Smith that "he was going to make a visual check of [Smith's] car, that he had that right." (R. 35.) Smith stated that Cpl. Hyde then just "dove right into the car" and began to search it. (R. 33.) Although Smith did not deny that marijuana was found inside his car, he maintained that the plastic bag containing the marijuana was not visible from outside the car (as suggested by Cpl. Hyde's testimony), but that instead the bag was inside a closed console between the front seats. Smith testified that he was not smoking marijuana while he was driving, that he was not intoxicated, and that, before he was pulled over, he had last smoked marijuana the previous day.
In his motion to suppress, Smith argued that the marijuana evidence was obtained in violation of his Fourth Amendment rights because, he said, Cpl. Hyde had "search[ed] the defendant's automobile without a search warrant, arrest warrant, consent, or probable cause." (C. 12.) Although the written motion to suppress did not allege that the initial stop of Smith's car was illegal, much of defense counsel's examination of Cpl. Hyde at the suppression hearing focused on his basis for stopping Smith's car and specifically whether he had observed Smith committing a traffic offense before he pulled him over. In its written order granting Smith's motion to suppress, the trial court concluded as follows:
 "The Court finds, based on the evidence presented, that there was no probable cause for the initial stop of the defendant's vehicle. Since the initial stop was invalid, any seizure of contraband subsequent to the stop would be inadmissible. The Court, therefore, finds the defendant's motion to suppress is due to be granted."
(C. 21.) The trial court did not make any findings of fact.
The State contends that, in granting Smith's motion to suppress based on the supposed lack of probable cause for Cpl. Hyde's initial stop of Smith's car, the trial court erroneously required the State to satisfy a legal standard more demanding than necessary to justify the stop of a motor vehicle. As the State correctly asserts, probable cause is not required for an investigatory stop of a motor vehicle. While probable cause may certainly justify a stop of a motor vehicle, under Terry v.Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "reasonable suspicion" will also justify an investigatory stop of a motor vehicle. See United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585,104 L.Ed.2d 1 (1989); Gwarjanski v. State, 700 So.2d 357, 358 (Ala.Crim.App. 1996); Scurlock v. State, 487 So.2d 286, 289 (Ala.Crim.App. 1986). "The standard of reasonable suspicion is less rigorous than the standard of probable cause, requiring only that the officers have `specific, particularized, and articulable reasons indicating that the person *Page 1173 
may be involved in criminal activity.'" Lamar v. State, 578 So.2d 1382,1385 (Ala.Crim.App.), cert. denied, 596 So.2d 659 (Ala. 1991), quotingHickman v. State, 548 So.2d 1077, 1080 (Ala.Crim.App. 1989) (citations omitted). See United States v. Cortez, 449 U.S. 411, 417-18,101 S.Ct. 690, 694-95, 66 L.Ed.2d 621 (1981).
The trial court's ultimate legal conclusion on a motion to suppress as to whether a given set of facts constitutes reasonable suspicion or probable cause is reviewed de novo on appeal. Ornelas v. United States,517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). The trial court's findings (if any) of "historical facts" — i.e., the events that occurred leading up to a search or seizure — are reviewed only for clear error and are to be afforded due deference. Id. Thus, when the evidence surrounding a suppression issue is uncontested and there is no substantial dispute as to the underlying facts, the trial court's determination of whether there was or was not reasonable suspicion or probable cause is a question of law subject to de novo review. State v. Hill, 690 So.2d 1201, 1203 (Ala. 1996). The trial court's resolution of conflicting evidence surrounding a suppression issue will be upheld by the reviewing court unless its decision is clearly erroneous, and the reviewing court will "`make all reasonable inferences and credibility choices in support of the trial court's ruling.'" State v. Shelton, 741 So.2d 473, 476 (Ala.Crim.App. 1999), quoting Allen v. State, 689 So.2d 212, 216 (Ala.Crim.App. 1995).
In the present case, given that the witnesses presented sharply conflicting evidence on several disputed issues, given that the trial court did not make any findings of fact or express assessments of the witnesses' credibility, and given that the trial court apparently applied only the probable-cause standard (and did not apply the reasonable-suspicion standard) when assessing the validity of Cpl. Hyde's initial stop of Smith's car, we cannot properly review the trial court's ruling on Smith's motion to suppress. We recognize that the trial court is not required by any rule or statute to set forth findings of fact in an order denying or granting a motion to suppress, and we further recognize our duty to "make all reasonable inferences and credibility choices in support of the trial court's ruling." However, because the trial court indicated that its ultimate ruling was based on the probable-cause standard, we cannot presume that the trial court, in concluding that the stop of Smith's car was "invalid," applied the proper, less stringent, reasonable-suspicion standard to whatever version of the underlying facts it accepted. While Cpl. Hyde's testimony concerning his observations of Smith's car before the stop, if believed, may not have been sufficient to establish probable cause to stop Smith's car (and the State does not appear to argue that Cpl. Hyde observed Smith committing an actual traffic offense before the stop), Cpl. Hyde's testimony, if believed, was certainly sufficient to establish the reasonable suspicion necessary to justify the stop. See, e.g., Mester v. State, 755 So.2d 66 (Ala.Crim.App. 1999). However, if the trial court did not find Cpl. Hyde's testimony that Smith was operating the car erratically to be credible or for some other reason chose to discount Cpl. Hyde's testimony on this issue, the trial court would be correct in concluding that there was neither probable cause nor
reasonable suspicion for the stop and in suppressing the State's evidence on that basis.
Under the circumstances of this case, in order for this court to conduct a meaningful review, it is necessary for the trial court to clarify the basis of its decision in light of the relevant legal principles. Accordingly, we remand this case to the trial court with directions for that court to make written findings of fact and conclusions *Page 1174 
of law pertinent to the issue whether Cpl. Hyde had a reasonable suspicion for making the initial stop of Smith's car. Because the trial court's determination in this regard could (although not necessarily) compel inquiry into the remaining grounds in Smith's motion to suppress, in the interest of judicial economy, we further direct the trial court to make written findings of fact and conclusions of law pertinent to the events that occurred after Smith's car was stopped, addressed particularly to Cpl. Hyde's alleged detection of the odor of burnt marijuana emanating from Smith's car, Cpl. Hyde's other observations at the scene and the information he obtained following the stop, and Smith's alleged consent to the search of his car. Due return of the trial court's written findings and conclusions of law should be filed with this court within 35 days of the date of this opinion. We pretermit discussion of the remaining issues raised by the State pending return to remand.
REMANDED WITH DIRECTIONS.*
McMillan, Cobb, Baschab, and Fry, JJ., concur.
* Note from the reporter of decisions: On November 27, 2000, on return to remand, the Court of Criminal Appeals affirmed, without opinion.