814 So.2d 988 (2001)
Ex parte Shirley HAILS.
(State v. Shirley Teresa Hails).
1000708.
Supreme Court of Alabama.
September 14, 2001.
Daniel G. Hamm of Keith & Hamm, P.C., Montgomery, for petitioner.
Bill Pryor, atty. gen., and Stephanie N. Morman, asst. atty. gen., for respondent.
Prior report: Ala.Cr.App., 814 So.2d 980.
PER CURIAM.
WRIT DENIED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., and JOHNSTONE and WOODALL, JJ., dissent.
JOHNSTONE, Justice (dissenting).
I respectfully dissent from the denial of the petition for a writ of certiorari in this case. The denial elevates merely convenient form over fundamentally important substance.
Before any discussion of the merits of my dissent, a caveat about the nature of any discussion of a petition for a writ of certiorari is appropriate. When we review such a petition to decide whether or not to grant it, we, of course, do not have the record on appeal before us. The whole purpose of the petition is to persuade us to issue our writ of certiorari directing the clerk of the inferior appellate court to send us the record for our review. Thus, when we review the petition to decide whether or not to issue the writ, we are dependent on the facts included in the opinion of the inferior appellate court, which must accompany the petition, and the petitioner's representations of what else the record below contains. We cannot be certain of the accuracy of the petitioner's representations about the contents of the record unless and until we issue our writ, receive the record, and review it for ourselves. My discussion in this dissent is based on the facts as contained in the opinion of the Court of Criminal Appeals, State v. Hails, 814 So.2d 980, 985 (Ala.Crim.App.2000), and Hails's petition and brief to us, but not the record itself, which the majority of our Court declines to get.
The defendant-petitioner Hails was charged with illegal possession of a credit card in violation of § 13A-9-14, Ala.Code 1975. She moved to suppress the credit card as evidence on the ground that it was seized in an illegal search of her coat pocket after a Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), patdown.
Only the police officer who seized the card testified at the suppression hearing. He described the circumstances of his Terry patdown; the basis of his "thinking" or "believing" that the object he felt through the material of the coat "could be a weapon," possibly a razor or a box cutter; his search into the coat pocket; and his feeling, seizure, and examination of the object, the credit card. After the officer finished testifying, the trial judge stated on the record, according to a quotation in Hails's brief to us:

*989 "I've pulled out tons of box cutters, razor blades, dope, guns. There is nothing about a credit card that resembles any of that. I mean, that'sI've done enough pat-down searches in my lifetime, and there isn't anything about a credit card that resembles a weapon. Now, that just isstretching it too far, and that justthat doesn't even get it.
"I mean, patting it down, there was nothing about this that would even make you think that that was a weapon."
(Petitioner's brief p. 6, citing R. 26-27.) On the basis of the incredibility of the officer's testimony and the trial judge's disbelief in it, she granted the motion to suppress.
She was right. Terry permits an officer to conduct a patdown search of the outer clothing of a person if the officer "is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." Terry, 392 U.S. at 24, 88 S.Ct. 1868. "`[S]uch a search "is limited in scope to a `pat-down' of the suspects' outer clothing and to seizure of hard objects whose size and shape give the officer probable cause to believe they are weapons."'" Martin v. State, 695 So.2d 141, 143 (Ala.Crim.App.1996) (quoting Travis v. State, 381 So.2d 97, 101 (Ala.Crim.App.1979)). The search must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry, 392 U.S. at 29, 88 S.Ct. 1868. "And in determining whether the officer acted reasonably in such circumstances, due weight must be given not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 392 U.S. at 27, 88 S.Ct. 1868. "Having detected the presence of an unknown, potentially dangerous object on a suspect during a frisk, the test for whether an officer may search farther and seize the item is an objective one." United States v. Swann, 149 F.3d 271, 275 (4th Cir.1998). "[I]n making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry, 392 U.S. at 21-22, 88 S.Ct. 1868.
Upon an interlocutory appeal by the State, however, the Court of Criminal Appeals reversed the trial judge's decision to suppress the credit card as evidence. The rationale of the Court of Criminal Appeals in its opinion was that the very testimony the trial judge disbelieved was "undisputed," that is, uncontradicted by any other witness.
The reversal by the Court of Criminal Appeals is diametrically opposed to the established law.
"The trial court's resolution of conflicting evidence surrounding a suppression issue will be upheld by the reviewing court unless its decision is clearly erroneous, and the reviewing court will `"make all reasonable inferences and credibility choices in support of the trial court's ruling."` State v. Shelton, 741 So.2d 473, 476 (Ala.Crim.App.1999), quoting Allen v. State, 689 So.2d 212, 216 (Ala.Crim.App.1995)."
State v. Smith, 785 So.2d 1169, 1173 (Ala. Crim.App.2000). "`Absent clear error, the [circuit] court's credibility choices at suppression hearings are binding on this court.'" Walker v. State, 551 So.2d 449, 451 (Ala.Crim.App.1989) (quoting United States v. Aldridge, 719 F.2d 368, 373 (11th Cir.1983)). Further, a "`trial court's ruling on a motion to suppress will not be *990 disturbed unless it is "palpably contrary to the weight of the evidence."'" State v. Hill, 690 So.2d 1201, 1203 (Ala.1996)(quoting Patterson v. State, 659 So.2d 1014 (Ala. Crim.App.1995)). "The trial court is in a far better [place] than this court to rule on the merits of a motion to suppress." Hill, 690 So.2d at 1203 (citing Sullivan v. State, 23 Ala.App. 464, 127 So. 256 (1930)). "Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence." Hill, 690 So.2d at 1203 (quoting Ex parte Agee, 669 So.2d 102, 104 (Ala.1995)).
Our recent case of Ex parte Anonymous, 812 So.2d 1234 (Ala.2001), from which I dissented, goes so far as to hold that a trial judge can rely on his or her opportunity to observe a witness's demeanor and delivery as a basis for disbelieving ore tenus testimony even if it is not disputed by any other evidence and even if the testimony itself is not incongruous. A fortiori, a trial judge, like the one in this case, can validly disbelieve ore tenus testimony that is incongruous or absurd.
The order of our Court, the Supreme Court, like most of our orders denying a petition for a writ of certiorari, does not recite any rationale for denying this petition. The reason the majority refuses to grant certiorari, however, is that Hails's petition and brief do not comply with the formal requirements of Rule 39, Ala. R.App. P. My disagreement with this decision is that Article VI, § 140, Ala. Constitution 1901, imposes on this Court a duty of "superintendence and control of inferior jurisdictions," the Court of Criminal Appeals in this case, and the importance of the substantive principles here exceeds the importance of the formal requirements of Rule 39.
In the case before us, the trial judge has exercised not only legally accurate judgment but also political courage in rejecting the officer's testimony and granting the motion to suppress. At the expense of the Fourth Amendment to the United States Constitution, the Court of Criminal Appeals has responded by disregarding the limits on Terry patdowns and searches, disregarding the ore tenus rule, disregarding the rightful prerogatives of the trial judge, and disregarding the duty of all judges to discourage disingenuous testimony.
In contrast, Hails has violated only the procedural method and form for placing her facts before this Court. The Court of Criminal Appeals had the record itself as the source of facts; and this Court has the facts recited in the opinion of the Court of Criminal Appeals and the facts recited in Hails's petition and brief, albeit not in conformity with Rule 39.
Contrary to hyperbolic statements appearing in a few cases, procedural compliance with Rule 39 is not jurisdictional in any legally accurate sense of the word. Pursuant to Article VI, § 140 of our constitution, we can review the decision of an inferior court at will. Indeed, in the case of White v. Reynolds Metals Co., 558 So.2d 373 (Ala.1989), this Court issued its writ of certiorari to the Court of Civil Appeals in the utter absence of any petition at all. In White, this Court issued its writ in response to a request by the then governor for an "advisory opinion"a request communicated to this Court only after the expiration of the 14 days allowed for the filing of a petition for a writ of certiorari; and this Court did not limit itself to an advisory opinion, but instead assumed full jurisdiction over the case and reversed the decision rendered by the Court of Civil *991 Appeals. Obviously we have the power to overlook the procedural noncompliance by Hails, who has, at least, petitioned us for the writ and has filed her petition and brief on time.
I am not condoning noncompliance with Rule 39. Rather, I am saying that sometimes our constitutional duty of superintendence requires us to overlook procedural noncompliance to enforce fundamental laws that a defective petition and brief show to be at risk. In each such case the procedural noncompliance unfortunately confronts us with a judicial value judgment a choice between the formal requirements of Rule 39 and our duty to maintain the fundamental principles of law. I think the value judgment in this case to deny the petition for our writ mistakenly prefers form over substance.