WINDOM, Presiding Judge.
Joey A. Grizzell appeals his guilty-plea conviction for manslaughter, a violatión of § 13A-6-3, Ala.Code 1975, and his resulting sentence of 16 years in prison.[1]
In February 2013, Grizzell was living with his girlfriend, Catherine Rayburn Monson, and her two children. On February 6, 2013, Grizzell picked up Monson’s two children from day care. He drove the older child to Rock and Martha Rayburn’s *480 house and left her in their care.[2] Grizzell then took the younger child, Keller,[3] to ‘the house that he shared with Monson. According to Grizzell, he dropped Keller on a tile floor in the house, injuring him. Griz-zell drove Keller, who was unresponsive, to the Rhyburns’ house where they telephoned emergency 911. The paramedics transported Keller to the Elmore Community Hospital. Keller was airlifted to Children’s Hospital of Alabama in Birmingham, where he later died.
On February 7, 2013, after being notified of Keller’s death, two law-enforcement officials with the Elmore County Sheriffs Office traveled to Children’s Hospital. At that time, Grizzell provided a statement to the officers that he had accidentally dropped Keller when his dog jumped on his leg, causing Keller to land head first on a tile floor. The following day, officers interviewed Grizzell again, at which time he provided a more substantial timeline for the events of February 6, 2013.
In early September 2013, the Elmore County Sheriffs Office received the results of Keller’s autopsy, which ruled his death a homicide. On September 4, 2013, law-enforcement officials placed Grizzell under arrest and informed him of his Miranda[4] rights. Grizzell waived his Miranda rights and signed a form indicating that he wished to speak to the investigators regarding his case. Shortly thereafter, Griz-zell- invoked his right to counsel and the investigators ceased questioning him. Grizzell was then booked into the Elmore County jail.
On September 5, 2013, Grizzell’s family arrived at the jail seeking information about his case and asking to speak with him. Sergeant Troy Evans went to Griz-zell’s cell and informed him that his family was there and asked him’ if he wanted to speak with them. Grizzell replied, ‘Yes.” (R. 15.) While Grizzell’s family was waiting on Grizzell to arrive, Sheriff Bill Franklin told Grizzell’s family that Grizzell was under arrest because the autopsy report differed from Grizzell’s initial statement. Sheriff Franklin also told Grizzell’s family that it would be in Grizzell’s best interest to give a statement. When asked during the suppression hearing if he made that comment to the family, Sheriff Franklin replied: ‘Yes, I believe you’re familiar with my. .antics on that, you had one of your own clients that-did that.” (R. 46.)
Afterwards, Sergeant Evans led Grizzell into the sheriff’s office, where his family was waiting. Sheriff Franklin then read Grizzell his Miranda rights and asked if he had an attorney. Grizzell replied that he did not. Sheriff Franklin then spoke with Grizzell,
“[t]o let him know that [Sheriff Franklin] had talked to ’his mother and some of our concerns. [Sheriff Franklin] told [Grizzell he] was not there that night, [Sheriff Franklin] do[es] not know whát happened that night, but that [the sheriff’s office] had a forensic pathologist that was going to say one thing that was far and wide from what [Grizzell] had alleged on that particular night....”
(R. 41.) After the sheriff spoke with Griz-zell and his family, Grizzell’s mother stated that “[the family] knew this was an accident, but if he had left anything out of his statement [then]'he needed to clear that *481 up and clarify it.” (R. 17.) Sheriff Franklin then walked away, and Grizzell was allowed to speak with his family for approximately five to seven minutes. After speaking with his family, Grizzell stated that he wanted to speak to investigators about some facts that he had left out of his initial statements. The investigators took him into another room and read Grizzell his Miranda rights. Grizzell waived his Miranda rights and provided a more detailed statement in which he admitted to causing additional injuries to Keller.
Thereafter, Grizzell, • through counsel, filed a motion to suppress his statement given on September 5, 2013. In his motion, Grizzell argued that his statement was taken after he had invoked his right to counsel and without counsel in violation of the holding in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). After conducting a hearing, the circuit court denied Grizzell’s motion to suppress.
On appeal, Grizzell argues that the circuit court abused its discretion in denying his motion to suppress. Specifically, Grizzell contends that his “statement was in response to further police-initiated custodial interrogation after he invoked his right to counsel.” (Grizzell’s brief, at 9.) Grizzell argues that, because he had invoked his right to counsel and hecause Sheriff Franklin initiated a discussion with him without counsel being present, his statement was taken in violation of the rule established by the Supreme Court of the United States in Edwards. This Court agrees.
Initially, this Court notes:
“ ‘In reviewing a trial court’s ruling on a motion to suppress, this Court reviews the trial court’s findings of fact under an abuse-of-discretion standard of review. “When evidence is presented ore tenus to the trial court, the court’s findings of fact based on that evidence are presumed to be correct,” Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994);' “[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence,” Bradley v. State, 494 So.2d 750, 761 (Ala.Crim.App. 1985), aff'd, 494 So.2d 772 (Ala.1986); and we make “ ‘all the reasonable infer-enees and credibility choices supportive of the decision of the trial court.’ ” Kennedy v. State, 640 So.2d 22, 26 (Ala. Crim.App.1993), quoting Bradley,- 494 So.2d at 761. “[A]ny conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court_Ab-sent a gross abuse of discretion, a trial court’s resolution of [such] conflicts] should not be reversed on appeal.” Sheely v. State, 629 So.2d 23, 29 (Ala. Crim.App.1993) (citations omitted)_ “ ‘ “[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment.” ’ ” Ex parte Jackson, 886 So.2d 155, 159 (Ala.2004), quoting [State v.] Hill, 690 So.2d [1201,] 1203 [ (Ala.1996) ], quoting in turn Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). A trial court’s ultimate legal conclusion on a motion to suppress based on a given set of facts is a question of law that' is reviewed de novo on appeal. See State v. Smith, 785 So.2d 1169 (Ala.Crim.App. 2000).’ ”
C.B.D. v. State, 90 So.3d 227, 237 (Ala. Crim.App.2011) (quoting State v. Hargett, 935 So.2d 1200, 1203-04 (Ala.Crim.App. ' 2005))..
In Miranda v. Arizona, the Supreme Court of the United States held that if a defendant invokes his Fifth • Amendment right to counsel during a custodial interrogation, then “the interrogation must cease until an attorney is present.” 384 U.S. at *482 473. In Edwards, 451 U.S. at 484-85, the Supreme Court held that once a defendant invokes his right .to counsel during custodial interrogation, the defendant “is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.” The rule established in Edwards is “rigid,” “prophylactic,” and designed “to protect an accused in police custody from badger[ing] or overreaching — explicit or subtle, deliberate. or unintentional.” Phillips v. State, 65 So.3d 971, 1020 (Ala.Crim.App. 2010) (citations and quotations omitted). Under that rule, law enforcement may not interrogate an accused after the accused ■has invoked his right to counsel unless counsel is present or the accused initiates the conversation with a “desire for a generalized discussion about the investigation..” Wimbley v. State, [Ms. CR-11-0076, Dec. 19, 2014] — So.3d —,- (Ala.Crim.App.2014).
Further, an interrogation of an accused by law-enforcement officers is not restricted to questioping; rather, it includes “any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect,” such as statements about the case to the accused or conversations with third parties about the case in the presence of the accused. United States v. Gomez, 927 F.2d 1530,1538 (11th Cir.1991) (citations and quotations omitted); see also Rhode Island v. Innis, 446 U.S. 291, 302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Thus, under Edwards, “once an accused requests counsel, the officer cannot ask questions, discuss the case, or present the accused with possible sentences and the benefits of cooperation,” unless the accused is provided counsel or initiates the discussion. Gomez, 927 F.2d at 1539.(citations omitted); see also Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983) (holding that “before a suspect in custody can be subjected to further interrogation after he requests an attorney there must be a showing that the ‘suspect himself initiates dialogue with the authorities’ ” (quoting Wyrick v. Fields, 459 U.S. 42, 46, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982))).
Accordingly, the Supreme Court’s holding in Edwards requires two inquiries:
“First, courts must determine whether the accused actually invoked his right to counsel. See, e.g., Edwards v. Arizona, supra, 451 U.S., at 484-485 (whether accused ‘expressed his desire’ for, or ‘clearly asserted’ his right to, the assistance of counsel); Miranda v. Arizona, 384 U.S., at 444-445 (whether accused ‘indicated] in any manner and at any stage of the process that he wish[ed] to consult with an attorney' before speaking’). Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions’with the' police, and (b) knowingly and intelligently waived the right he had invoked. Edwards v. Arizona, supra, 451 U.S., at 485, 486, n. 9.”
Smith v. Illinois, 469 U.S. 91, 95,105 S.Ct. 490, 83 L.Ed.2d 488 (1984).. Wimbley, So.3d at-; Phillips v. State, 65 So.3d at 1020; Eggers v. State, 914 So.2d 883, 899-900 (Ala.Crim.App.2004).
Here, the State does not dispute that Grizzell invoked his right to counsel before giving his statement on September 5, 2013. Further, Sheriff Franklin admitted that before Grizzell was present, he, as part of his -“antics,” told Grizzell’s family that it *483 would be in Grizzell’s best interest for him to give a statement. Once Grizzell was present, Sheriff Franklin read Grizzell his Miranda rights. Sheriff Franklin then discussed his concerns and informed Griz-zell that the autopsy refuted Grizzell’s initial statement. Sheriff Franklin’s reading Grizzell his Miranda rights and then discussing the case were actions he should have known were “reasonably likely to elicit an incriminating response.” Gomez, 927 F.2d at 1538. Therefore, Sheriff Franklin’s comments constituted an interrogation after Grizzell had requested counsel in violation of Edwards.
Further, the fact that Grizzell spoke with his family for a few minutes after the Edwards violation and before telling Sheriff Franklin that .he wanted to speak with investigators does not “cure the infection” of the Edwards violation. Gomez, 927 F.2d at 1538. Grizzell was not released from custody. Cf. Maryland v. Shatzer, 559 U.S. 98, 109, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010). As part of his “antics,” Sheriff Franklin told the family that it would be in Grizzell’s best interest for him to give a statement. Once Grizzell was in his family’s presence and after Sheriff Franklin initiated his interrogation, Grizzell’s mother stated that “[the family] knew this was an accident, but if [Grizzell] had left anything out of his statement [then] he needed to clear that up and clarify it.” (R. 17.) After Sheriff Franklin’s interrogation, Grizzell spoke with, his family for only a few minutes and then informed Sheriff Franklin that he wanted to speak with investigators. Cf Maryland, 559 U.S. at 109. Under these circumstances, this Court holds that Grizzell’s brief meeting with his family was insufficient to attenuate the Edwards violation.
Because Grizzell’s statement on September 5, 2013, was taken in violation of Edwards, the circuit court abused its discretion by denying Grizzell’s motion to suppress. Accordingly, the circuit, court’s judgment is reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
WELCH and KELLUM, JJ., concur.
JOINER, J., concurs specially, with opinion, which BURKE, J., joins.

. Grizzell was originally indicted for murder, a violation of § 13A-6-2, Ala.Code 1975, but he ultimately pleaded guilty to manslaughter pursuant to a negotiated plea agreement with the State. (C. 12; R. 103).

. The Rayburns are the children’s maternal grandparents.

. The victim in this case is referred to as “Donovan Keller Munson” and "Jon Keller Monson” in the record. For the purposes of this appeal, the .victim will be referred to as "Keller.”

.Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).