We granted the State's petition for certiorari review to determine whether a police officer was justified in conducting an investigatory stop of an automobile based on an informant's tip that two named suspects had been selling crack cocaine from the vehicle approximately two hours earlier. The Court of Criminal Appeals, with an unpublished memorandum, held that the stop violated the Fourth Amendment as applied to the states through the Due Process Clause of the Fourteenth Amendment and, therefore, that the evidence should have been suppressed.State v. Hill, 683 So.2d 1074 (Ala.Crim.App. 1996) (table). We conclude that the stop in this case was consistent with the *Page 1202 
principles of the Fourth Amendment. We reverse and remand.
Charlie Hill was indicted by the Grand Jury of Chambers County on one count of possession of cocaine and one count of possession of marijuana, in violation of §§ 13A-12-212 and13A-12-214, Ala. Code 1975, respectively. Arguing that the police had found the drugs that formed the basis for the charges only as a result of an illegal seizure, Hill moved to suppress the evidence.
At the hearing on the motion to suppress, Jerome Bailey, a narcotics investigator for the Chambers County Sheriffs Department, was the only witness to testify. He stated that since November 1994, he and the Lafayette Police Department had received information regarding illegal activities by Hill although he did not specify the sources. Bailey testified that on the evening of February 24, 1995, a confidential informant told him that Hill was selling crack cocaine "from a blue Hyundai that was tinted down from the front row at Hilltop Apartments, here in Lafayette." The informant told Bailey that Hill was in the company of a man named Traco Heard and that the crack cocaine was in a plastic bag in Hill's right front pocket. Bailey testified that the informant had previously furnished information that had led to "probably 8 or 9 arrests. It could have been a little less." Approximately three days earlier, three other people, who used drugs and who had purchased crack cocaine in the past, told Bailey that Hill had offered to sell them "a 50-dollar rock." The record is silent regarding the past reliability of these three people or the circumstances under which they made their accusations.
After receiving information from his confidential informant, Bailey drove toward Hilltop Apartments. While Bailey was en route, the Lafayette Police Department received a report of a shooting, which appears to have also occurred somewhere at Hilltop Apartments. Because he was already in the area, Bailey broke off to assist the other officers on the call. Later, when Bailey reached the location at the apartments where Hill was supposedly selling crack cocaine, the blue Hyundai automobile was gone. Bailey's informant, however, was still at Hilltop Apartments. He told Bailey that the Hyundai was "going down by Southside" or "by Southside Elementary School." Bailey proceeded to that area, but his attempts to locate the vehicle there were fruitless.
In the early morning of February 25, about two hours after the contact with his informant at the apartments, Bailey was at a Chevron gasoline station in downtown Lafayette. There he saw a blue Hyundai with tinted windows "coming through Lafayette, headed toward Lafayette Street, North." Bailey testified that although he knew both Hill and Heard on sight, he could not discern the identity or number of people who were in the Hyundai when it went by, because the windows were darkly tinted. However, he also stated that he "recogniz[ed] the car immediately as being that of Hill." Bailey pulled the blue Hyundai over for an investigatory stop. He had not observed any traffic violations, and he acknowledged that the sole basis upon which he decided to stop Hill's car was the information furnished to him by the informant and the earlier complaints from the three other people.
Bailey testified that once he approached the automobile, he recognized Charlie Hill as the driver and Traco Heard as the passenger. When Bailey asked Hill for his driver's license, he smelled burning marijuana coming from inside the car. Bailey asked Hill to step out of the car and told him about the reports that he had been selling crack cocaine. During this conversation, Bailey smelled marijuana on Hill's breath.
Bailey then asked Hill for permission to search the car. Hill told him to go ahead. In the glove compartment, Bailey found a plastic bag containing four rocks of crack cocaine and a plastic bag containing marijuana. Hill was arrested and given his Miranda rights.
At the suppression hearing, Hill conceded that there might possibly have been grounds to stop and investigate him if police, acting on the tip, had found the blue Hyundai at the Hilltop Apartments as indicated by the informant. But he argued that the justification no longer existed at the time of the actual stop, because approximately two hours had *Page 1203 
elapsed since Bailey last spoke with his informant and the stop occurred randomly at a location the informant had never specified. The court agreed and held that the marijuana and crack cocaine were due to be suppressed on the basis that the police officer had lacked the requisite grounds to conduct the initial investigatory stop that directly led to the seizure of the evidence. From the transcript of the hearing, it appears that the trial court believed that the State was required to show that the officer possessed a reasonable suspicion that Hill was engaged in ongoing or imminent criminal activity when the stop was made and that the court was also concerned about police overreaching.[1]
The State appealed the suppression ruling, under Rule 15.7(a)(1), Ala.R.Crim.P. The Court of Criminal Appeals affirmed. Its unpublished memorandum would suggest that the Court of Criminal Appeals agreed that the stop of the vehicle was not justified because the police did not have sufficient reason to believe that the car was currently being used in an illegal endeavor. The Court of Criminal Appeals stated, in pertinent part, "The officer who stopped the appellee's vehicle did not have reasonable suspicion to believe that the occupants of the car were engaged in criminal activity." Thus, the Court of Criminal Appeals agreed that the evidence was illegally seized and therefore had to be suppressed. We disagree.
As a preliminary matter, we note that there has been some debate regarding the applicable standard of appellate review. In its unpublished memorandum, the Court of Criminal Appeals showed great deference to the trial court's decision to suppress the evidence of the cocaine and marijuana. It stated:
 "[A] trial court's ruling on a motion to suppress will not be disturbed unless it is 'palpably contrary to the weight of the evidence.' Patterson v. State, 659 So.2d 1014 (Ala.Cr.App. 1995). The trial court is in a far better [sic] than this court to rule on the merits of a motion to suppress. Sullivan v. State, 23 Ala. App. 464, 127 So. 256 (1930). The trial court's ruling [on] the motion to suppress was not palpably wrong."
The State contends that the deference of the Court of Criminal Appeals to the judgment of the trial court was unwarranted. It claims that an appellate court should review de novo the trial court's finding that "reasonable suspicion" was lacking, because the facts in the case are not in dispute. We agree.
The trial judge made his ruling following a hearing at which he heard oral testimony only from Officer Bailey. We stated inEx parte Agee, 669 So.2d 102 (Ala. 1995):
 "Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala. 1995). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala. 1994)."
669 So.2d at 104. "Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts." Stiles v. Brown,380 So.2d 792, 794 (Ala. 1980) (citations omitted). The trial judge's ruling in this case was based upon his interpretation of the term "reasonable suspicion" *Page 1204 
as applied to an undisputed set of facts; the proper interpretation is a question of law.
Hill counters with the argument that some facts are disputed, and he argues that the judge's assessment of credibility was a key factor in his decision to suppress. It is true that, absent clear error, the trial court's credibility choices on issues of fact at suppression hearings are binding on this Court.Powell v. State, 624 So.2d 220 (Ala.Cr.App. 1993). However, Hill has not indicated what facts are in dispute. He presented no evidence at the hearing, and there was no evidence that conflicts with or tends to undermine the testimony given by Bailey. Hill also adopted the statement of facts as set out in the State's brief, under Rule 39(k), Ala. R. App. P, adding only that the car was actually owned by Hill's brother and that when it appeared that Heard might attempt to flee Bailey told Heard that he had a police dog in his vehicle, although Bailey had no such dog. But these two facts are not relevant to the question whether the officer had a "reasonable suspicion" at the time he stopped the car. Thus, we review de novo the trial court's ruling on the issue and the judgment of the Court of Criminal Appeals. Ex parte Agee, supra.
The Fourth Amendment to the United States Constitution prohibits all seizures "including . . . vehicles" without justification, including "brief authoritative detentions of vehicles and occupants for questioning." Ex parte Yeung,489 So.2d 1106 (Ala. 1986). In Terry v. Ohio, 392 U.S. 1, 22,88 S.Ct. 1868, 1880-81, 20 L.Ed.2d 889 (1968), the Supreme Court of the United States held that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." This same rationale also applies to stops of moving automobiles. See United States v. Brignoni-Ponce, 422 U.S. 873,95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Ex parte Carpenter,592 So.2d 627 (Ala. 1991). Under Terry, a stop may be made on the basis of reasonable suspicion, which is a less demanding standard than probable cause; it may be satisfied by a lesser quantity or content of information or less reliable information than would be required for a finding of probable cause. Atwellv. State, 594 So.2d 202 (Ala.Cr.App. 1991), cert. denied sub nom. Inabinett v. State, 594 So.2d 214 (Ala. 1992), citingAlabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416,110 L.Ed.2d 301 (1990).
Information provided by a reliable informant can provide the reasonable suspicion required to justify a Terry stop. Adams v.Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In Alabama v. White, supra, the United States Supreme Court recognized that the same considerations relevant in determining whether an informant's tip gives rise to probable cause are also "relevant in the reasonable-suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard." White, 496 U.S. at 328-29,110 S.Ct. at 2415. Under Aguilar v. Texas, 378 U.S. 108,84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States,393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), in order for an informant's tip to form the basis of a probable cause finding the prosecution had to satisfy a two-pronged test of proving (1) an informant's "veracity" or "reliability" and (2) the informant's "basis of knowledge." See, e.g., Ex parte Meeks,434 So.2d 844 (Ala. 1983); Knight v. State, 346 So.2d 478
(Ala.Cr.App. 1977), cert. denied, 346 So.2d 483 (Ala. 1977); see also H. Maddox, Alabama Rules of Criminal Procedure § 3.9 (1990). But in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317,76 L.Ed.2d 527 (1983), the Supreme Court adopted a more flexible "totality of the circumstances" approach, under which an informant's "veracity" or "reliability," and "basis of knowledge" are highly relevant factors in determining whether probable cause exists, allowing consideration of other factors, such as corroboration by independent police work. In addition, under Gates, "a deficiency in one [of the two Spinelli factors, 'veracity' or 'reliability,' and 'basis of knowledge,'] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Page 1205 462 U.S. at 233, 103 S.Ct. at 2329. See also Ex parte Carpenter, supra.
Contrary to the position apparently taken by both the trial court and the Court of Criminal Appeals, it is not necessary for police to reasonably suspect that a person iscurrently engaging in criminal activity in order to make an investigatory stop to ask questions or check identification. InUnited States v. Hensley, 469 U.S. 221, 105 S.Ct. 675,83 L.Ed.2d 604 (1985), the United States Supreme Court held, "[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then aTerry stop may be made to investigate that suspicion."469 U.S. at 229, 105 S.Ct. at 680 (emphasis added). See also A.W.M. v.State, 627 So.2d 1148 (Ala.Cr.App. 1993); Powell v. State,548 So.2d 590 (Ala.Cr.App. 1988) aff.; Cotton v. State,481 So.2d 413 (Ala.Cr.App. 1985). In Hensley, an informant passed along to a St. Bernard, Ohio, police officer information indicating that Hensley had driven the getaway car in the robbery of a local tavern that had occurred six days earlier. About five miles away, the police department in Covington, Kentucky, some of whose members were familiar with Hensley, received the "wanted flyer" that was based upon the informant's tip. About 12 days after the robbery, a Covington officer who had seen the flyer reported that he recognized Hensley in the driver's seat of a white Cadillac convertible. A second Covington officer heard this report and pulled the automobile over for an investigatory stop a short time later. He asked the two occupants to exit the automobile. The officer saw a revolver in plain view protruding from under the passenger's seat, and a subsequent search of the car yielded two more weapons. 469 U.S. at 223-25, 105 S.Ct. at 677-78. Hensley argued that the weapons evidence should have been suppressed because, he argued, the Covington police had impermissibly stopped him in violation of the Fourth Amendment. The Supreme Court disagreed, concluding that the stop was lawful because the police had had probable cause, based upon the informant's reliable tip, to believe that Hensley was involved in the prior armed robbery. 469 U.S. at 233-34, 105 S.Ct. at 683. The Court further reasoned,
 "The justification for a stop did not evaporate when the armed robbery was completed. Hensley was reasonably suspected of involvement in a felony and was at large from the time the suspicion arose until the stop by the Covington police. A brief stop and detention at the earliest opportunity after the suspicion arose is fully consistent with the principles of the Fourth Amendment."
469 U.S. at 234, 105 S.Ct. at 683.
In McCoy v. State, 651 So.2d 1149 (Ala.Cr.App. 1994), the Court of Criminal Appeals applied these principles in a case that factually is very similar to this one.[2] In McCoy, the Court upheld the stop of an automobile on the basis of information communicated by other police officers and tips from anonymous concerned citizens and a confidential informant who had proved reliable on two previous occasions. Within the 72 hours before the traffic stop, these sources had advised the investigating officer that two named suspects had sold crack cocaine from a white Ford Tempo automobile with Georgia plates in the parking lot of a supermarket on at least two occasions in the preceding 10 days or so. The officer was also alerted that these suspects were driving to an area each morning and afternoon to pick up more drugs. He saw the vehicle that had been described to him, pulled it over for a Terry stop, and subsequently found crack cocaine on the defendant's person. While it does not appear that the police possessed knowledge that the suspects were on a "drug run" at the time, the Court of Criminal Appeals upheld the stop, recognizing that " '[t]he standard for allowing aTerry stop is whether there is a reasonable suspicion that "the person being stopped has engaged in some type of criminal activity." ' " 651 So.2d at 1150 (citation omitted) (emphasis added). *Page 1206 
At the outset, we note that here we address only whether the initial investigatory stop of Hill's vehicle was lawful under the Fourth Amendment. The separate issue whether the officer's subsequent full search of the automobile was permissible was not ruled upon below and, therefore, is not properly before this Court.
We conclude that the information in Bailey's possession clearly supported a reasonable suspicion that Hill had sold crack cocaine out of the blue Hyundai that same night at Hilltop Apartments. Under Alabama law, such conduct, if proven, would constitute unlawful distribution of a controlled substance, a Class B felony. Ala. Code 1975, § 13A-12-211;Anderson v. State, 668 So.2d 159 (Ala.Cr.App. 1995). There was no independent police corroboration of the informant's allegations. See White and Carpenter, supra (anonymous telephone tip could be the basis of a Terry stop of an automobile if there is sufficient independent police corroboration of even otherwise innocent details provided by the informant). However, on the basis of considerations enumerated in Aguilar and Spinelli, supra, the known informant was shown to be personally reliable, by the officer's uncontested testimony that the informant had provided accurate information on several prior occasions. See Rickman v. State,361 So.2d 22 (Ala.Cr.App.), reversed on other grounds,361 So.2d 28 (Ala. 1978); Carpenter, supra. While the exact basis of the informant's knowledge in this case could have been made clearer, we think Bailey's uncontested testimony at the hearing strongly suggests that the known informant had personal knowledge of the events and that he related that knowledge to the police. On cross-examination, Bailey answered that his confidential informant said that he had seen Hill and his car that night, and when Bailey arrived at Hilltop Apartments to investigate the alleged drug sales, the confidential informant was present at the scene and immediately provided further information regarding the suspected movements of Hill and Heard in the blue Hyundai. These circumstances, taken together, suggest that the informant had seen and was aware of Hill's activities at the apartments that same evening. Moreover, the content of the informant's information "describe[d] the accused's criminal activity in sufficient detail . . . [for the officer to] know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." Spinelli, supra, 393 U.S. at 416, 89 S.Ct. at 589. Here, the informant supplied the names of both suspects, a detailed description and exact location of the parked vehicle, the type of drugs being sold, and their location on Hill's person. This is " 'sufficient information' " from which it can be " 'reasonably infer[red] that the informant had gained his information in a reliable way.' " Lamar v. State,578 So.2d 1382, 1383 n. 1 (Ala.Cr.App.), cert. denied, 596 So.2d 659
(Ala. 1991), quoting Moynes v. State, 568 So.2d 392, 394
(Ala.Cr.App. 1990). See also Channell v. State, 477 So.2d 522
(Ala.Cr.App. 1985).
It must also be recalled that when Bailey stopped the vehicle, he possessed, in addition to the specific information supplied by the known informant, knowledge passed along from three other persons who had stated approximately three days earlier that Hill had offered to sell them crack cocaine. While the record is silent on the trustworthiness of these other persons, these accusations would at least tend to minimally corroborate the information submitted by the reliable known informant. Given the lesser standard of suspicion required for a Terry stop, we believe that the content and reliability of the confidential informant's information exhibited sufficient "indicia of reliability" to show that Hill had recently engaged in criminal activity and, thus, that that information warranted a stop. White, supra.
Having been established, the officer's reasonable suspicion that Hill had sold crack cocaine out of the blue Hyundai did not end by the passing of a two-hour period during which no facts came to light that might cast doubt upon the informant's allegations. Hill was suspected of involvement in a felony and was at large until the stop by Bailey. The officer was personally familiar with the suspect and his particular automobile, of which the informant had supplied a description that allowed the officer to identify it specifically. *Page 1207 
See Carpenter, supra. Like the defendant in Hensley, Hill was briefly stopped at the earliest opportunity after the suspicion arose and was questioned about his actions earlier in the evening. The initial stop was lawful under the Fourth andFourteenth Amendments to the United States Constitution as recently applied by the Supreme Court of the United States.[3]
Therefore, the evidence seized should not have been suppressed on the grounds that the police were unjustified in conducting an investigatory stop of Hill's vehicle.
The judgment of the Court of Criminal Appeals is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
[1] At the hearing, the trial judge stated, in pertinent part: "I'm concerned if I heard evidence that the police went over in the area where they said, two people were in this Hyundai, and they were selling drugs, or whatever, and went over there and stopped them then. But I haven't heard any evidence at all that indicates that anybody gave this officer any information that indicates that there's a blue car, with tinted windows, going to be coming through Lafayette after midnight, engaged in some type of illegal activity. . . . I'm having a little problem seeing how, with no laws violated, no reason whatsoever other than to just say, 'Well, here's a blue car I've been hearing sells drugs, stop it anywhere, anytime, anyplace, regardless of what's going on, and for no other reason.' . . . Where does the unbridled discretion stop . . . ?"
[2] We point out that, coincidentally, not only the circumstances of the stops were analogous in McCoy and this case; the same trial court judge presided in both cases, and Officer Jerome Bailey was the investigating officer who made the stops of both automobiles.
[3] We have recognized that the unreasonable-search-and-seizure provision of our state constitution, Ala. Const. of 1901, Article I, § 5, "obviously protects [interests] similar, if not identical," to those protected by the Fourth Amendment to the Federal Constitution, Ex parte Caffie, 516 So.2d 831, 837
(Ala. 1987). However, as in Caffie, "[W]e do not mean to imply that there is, of necessity, a one-to-one correspondence between the protections afforded by our state constitution and those afforded by the federal constitution." Id. Of course, the states are free to interpret their own constitutions to ensure greater protections than the United States Supreme Court's interpretation of a federal counterpart provides. For example, compare United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405,82 L.Ed.2d 677 (1984) (recognizing a "good faith" exception to the exclusionary rule regarding police reliance on a warrant ultimately held to be invalid) with State v. Novembrino,105 N.J. 95, 519 A.2d 820 (1987); State v. Marsala, 216 Conn. 150,579 A.2d 58 (1990); Commonwealth v. Edmunds, 526 Pa. 374,586 A.2d 887 (1991); State v. Oakes, 157 Vt. 171, 598 A.2d 119
(1991) (rejecting the same exception on independent state constitutional grounds). But see Ex parte Morgan, 641 So.2d 840
(Ala. 1994) (subscribing to the "good faith" exception of Leon, supra).