WELCH, Judge,
dissenting.
Derendrick Laquinton Landrum was arrested for possession of a controlled substance, cocaine, a violation of § 13A-12-212, Ala.Code 1975. Landrum filed a motion to suppress, which was heard on December 19, 2007. The trial court granted the motion and the State timely appealed.
I disagree with the conclusion that the evidence before the trial court was essentially undisputed because any inconsistencies were created by the trial court’s questions and comments and that, therefore, review on appeal was de novo. The main opinion states:
“In the instant case, Cpl. Corkran was the sole witness to testify at the suppression hearing. Any conflicts in the evidence presented at the suppression hearing were a direct result of questioning by, or comments made by, the circuit court and are indicative of the circuit court’s ultimate ruling on the motion to suppress. Given the Alabama Supreme Court’s holding in [State v.] Hill [, 690 So.2d 1201 (Ala.1996) ], the only issue before this Court is whether the circuit court correctly applied the law to the facts presented at the suppression hear *429 ing, and we afford no presumption in favor of the circuit court’s ruling.”
18 So.3d at 426-27.
In this case, although the trial court did not make written findings of fact, it is obvious that the trial court did not believe Cpl. Corkran’s testimony, which contained numerous inconsistencies. Officer Cor-kran testified that he initially approached Landrum to ask him if he needed any assistance (Supp. R. 3) and that he was suspicious because Landrum was in “a high traffic drug area” (Supp. R. 3).[3] The trial court stated, “Well, now, I don’t find your benevolent purpose to be quite accurate, though, because you went down there thinking he was involved in some kind of criminal activity.” (Supp. R. 4.) When the officer testified that the suspicion that Landrum might have been involved in criminal activity arose in his mind first, the trial court stated, “Okay. So let’s deal with that. I don’t buy this business about you going down there to help him.” (Supp. R. 4.)
The trial court further questioned Cpl. Corkran about his classification of the location as a high-crime area, and the court asked Cpl. Corkran about the crime statistics for the area. The officer stated that he did not know, specifically, the statistics for the area. The trial court asked, “Well, how can you call it a high crime area?” (Supp. R. 6.) Cpl. Corkran stated, “We have a lot of prostitution.” (Supp. R. 6.) Cpl. Corkran also testified that he was aware of at least five houses in the area from which illegal drugs were sold, but he was unable to state how many arrests or convictions for illegal drug sales had come from that area. The trial court then stated, “[D]on’t give me this moniker of high crime area. Okay? It doesn’t mean much to me.” (Supp. R. 7.)
On cross-examination, Cpl. Corkran testified that he stopped Landrum because he was suspicious that Landrum was attempting to purchase or sell drugs. Cpl. Cor-kran testified that Landrum parked his car next to a vacant lot on a dead-end street, and walked up to a residence. When the trial court asked Cpl. Corkran whether he had any information about the house Landrum was visiting, the officer testified, “I have no evidence that they were doing anything wrong in the house.” (Supp. R. 13.) When the trial court asked Cpl. Cor-kran what evidence he had had at the time that Landrum was doing something wrong, the following exchange occurred:
“[Cpl. Corkran]: He walked up to the door.
“THE COURT: That’s a crime in this city?
“[Cpl. Corkran]: No. Knocked on the door, couldn’t get anybody, walked back to his car, I left, and he was coming back.
“THE COURT: Well, that’s a crime in this city?
“[Cpl. Corkran]: He went up to the same door twice knowing nobody would answer the door.
“THE COURT: Well, maybe he was trying to arouse them. Maybe they were in there [a]sleep.”
(Supp. R. 14.)
During redirect examination, the trial court stated that Cpl. Corkran had to have *430 a reasonable suspicion of criminal activity. The prosecutor stated that Cpl. Corkran had stated that, and the trial court replied, “I don’t think he has.” (Supp. R. 16.) The prosecutor then asked Cpl. Corkran whether Landrum might have been involved in any kind of theft of property at the house, and the officer replied, “Well, we do have a great deal of copper theft.” (Supp. R. 16.) The trial court stated, “Well, you had no information at the time. Now, you told me first of all that you went to give him some assistance.” (Supp. R. 16). The court noted that Cpl. Corkran had next relied on suspicions of Landrum’s involvement in criminal activity. The trial court granted the motion to suppress.
The main opinion holds that de novo review of the trial court’s ruling is required because Cpl. Corkran was the only witness and because the conflicts in his testimony were the direct result of questions or comments by the trial court. First, the fact that only one witness testified does not mandate de novo review. Second, I do not agree that the conflicts in Cpl. Corkran’s testimony resulted only from questions or comments from the trial court.
In State v. Ivey, 709 So.2d 502 (Ala.Crim.App.1997), this Court considered whether a de novo standard of review should be applied when reviewing a trial court’s order granting a motion to suppress, which followed a hearing at which only one witness testified. The Court stated:
“The findings of a trial court on a motion to suppress are binding on this court unless they are clearly erroneous. Simmons v. State, 428 So.2d 218 (Ala.Cr.App.1983).
“The State argues that this court should not apply this standard of review to the trial court’s findings, but rather should conduct a de novo review because the evidence is not subject to material dispute because there was only one witness at the hearing and because the trial court did not make findings of fact. The State relies on State v. Hill, 690 So.2d 1201 (Ala.1996). However, Hill is distinguishable from this case. In Hill, no facts were presented that conflicted with or undermined the testimony of the only witness; moreover, the defendant adopted in his brief the statement of facts set out in the State’s brief. Id. 690 So.2d at 1204. Hill recognized that where a trial court improperly applies the law to the facts or where the evidence is undisputed, no presumption of correctness exists as to the trial court’s judgment. Id. 690 So.2d at 1203.
“In this case, the parties did not stipulate to the facts and they did not adopt the same version of facts in their briefs. Even where the matter rests upon the testimony of only one witness, the trier of fact is free to accept or reject the witness’s statements. Where inferences to be drawn from the evidence are susceptible to more than one rational conclusion, the decision is for the factfinder. Willcutt v. State, 284 Ala. 547, 226 So.2d 328 (1969). This court will not interfere when the evidence tends to support the factual finding. Simmons v. State, 428 So.2d 218 (Ala.Cr.App.1983). Although only one witness testified, his testimony was not free of dispute.”
709 So.2d at 505. The Court in Ivey applied the “clearly erroneous” standard of review rather than the de novo standard of review, and it upheld the trial court’s ruling on the motion to suppress.
As was the case in Ivey, the testimony of the sole witness in this case was inconsistent. It is unclear from Cpl. Corkran’s testimony the reason he relied on for stopping Landrum. He testified to at least four different reasons: to offer assistance *431 to Landrum; because he was suspicious that Landrum might have been involved in illegal drug activity; because Landrum was in a high-crime area where prostitution was a problem; because Landrum might have been involved in theft of copper pipe at the residence where he had twice knocked on the door. Thus, as in Ivey, the conflicts in the testimony of the sole witness made the evidence susceptible to more than one rational conclusion, and the factual and credibility determinations based on that testimony were for the trial judge.
Furthermore, I disagree with the assertion in the main opinion that the inconsistencies in Cpl. Corkran’s testimony were the result only of the trial court’s questions or comments. To the contrary, it was as a result of the prosecutor’s questions that Cpl. Corkran testified about three of four different reasons he had for stopping Landrum: that he stopped to ask whether Landrum had a problem with his vehicle; that he was suspicious that Land-rum had stopped next to a vacant lot; and that Landrum could have been involved in theft of copper from the property. In any case, the fact that some of the inconsistencies in Cpl. Corkran’s testimony resulted from the trial court’s questions and comments is irrelevant. The fact is that Cpl. Corkran’s testimony was inconsistent. The inconsistencies in the testimony dictate that the “clearly erroneous” standard of review should be applied, no matter how that testimony was elicited.
Applying that standard of review, I would affirm the trial court’s order. There is ample support in the record for the trial court’s determination that Cpl. Corkran’s Terry[4] stop was improper because it failed to establish any reasonable suspicion based on any specific, articulable facts that Landrum was engaged in, or was about to engage in, criminal activity. Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). “In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant’s right to personal security and privacy tilts in favor of freedom from police interference.” Brown v. Texas, 443 U.S. at 52, 99 S.Ct. 2637.
Because I would affirm the judgment of the trial court, I respectfully dissent from the main opinion.

. The transcript of the suppression hearing is in the supplemental record, and the pages of that transcript are unnumbered. The State, in its brief, noted that it had numbered the pages beginning with the title page of the transcript, which it designated page 1, and then had numbered the pages consecutively through page 17, the certificate of completion. For purposes of clarity in this dissent, I will use the same page numbering. Pages of the suppression hearing will be designated "(Supp. R.)" and will be followed by the relevant page number or numbers.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).