COBB, Chief Justice.
 

 Albert W. Key appeals from a judgment as a matter of law entered on his claims against Eleanore K. Allison and Baldwin County. We reverse and remand.
 

 Facts and Procedural History
 

 A walkway known locally as “the boardwalk” extends alongside the bay side of a number of privately owned bayfront properties along Mobile Bay in Point Clear from south of Zundel’s Lane northward to the Grand Hotel, a distance of about one mile.
 
 [1]
 
 The boardwalk has been in existence and in use by the residents of Point Clear and the general public for over 100 years. The boardwalk was originally con
 
 *279
 
 structed of wooden boards, but it is currently composed of various materials, including boards and concrete, and in some places it is simply an unimproved path across the sand. Property owners along the boardwalk have historically maintained the portion of the boardwalk that crossed their property in accordance with their own wishes and judgment.
 

 The landward side of the bayfront properties that the boardwalk crosses abuts Scenic Highway 98. Any destination that can be reached by the boardwalk can also be accessed by Scenic Highway 98. At the time of the trial of this case, the portion of Scenic Highway 98 that parallels the boardwalk did not have a sidewalk or a shoulder that could be used for pedestrian traffic. However, at the time of the trial of this case, plans existed to create a bike path along Scenic Highway 98, which could also be used by pedestrians.
 

 For approximately 20 years, Key has lived on the bay in a house just south of Zundel’s Lane, which runs perpendicular to Scenic Highway 98. Key is familiar with the boardwalk, and he uses it regularly. Key knows of no one who has ever requested or received permission to use the boardwalk. In the past, Key regularly used the boardwalk to travel by foot between his house and his office, which is located north of the Grand Hotel. Members of his family, including his children and grandchildren, have also used the boardwalk for beach access and to travel by foot and on bicycle to various destinations along the bay.
 

 In 1987, Allison purchased the bayfront property just north of Zundel’s Lane. She moved a house onto the property and has since lived there. The public has historically accessed the boardwalk north of Zun-del’s Lane through a gap in a fence that runs along Allison’s southern property line. The part of the boardwalk that crosses Allison’s property is composed of concrete slabs. According to Allison, “lots of people” have asked her for permission to use the part of the boardwalk that traverses her property. She testified at trial that the people who asked for permission “usually ... were from like Germany or something.”
 

 In 2004, Hurricane Ivan damaged the portion of the boardwalk on Allison’s property. Allison’s pier was also destroyed in Hurricane Ivan, and Allison stacked the boards from the pier on the damaged concrete slabs that had been the boardwalk by her house. Afterward, people using the boardwalk walked around Allison’s stack of boards.
 

 At some point, Key and his wife asked Allison to move the stack of boards from the area of the boardwalk. Allison did not move the stack of boards; instead, she boarded up the gap in her fence, effectively blocking public access to the boardwalk north of Zundel’s Lane.
 

 On June 10, 2008, Key sued Allison, seeking a judgment declaring that “the boardwalk is a dedicated public walkway” across Allison’s property and declaring that Key has a legal right to maintain and repair the portion of the boardwalk that crosses Allison’s property. In addition, Key sought an order enjoining Allison from interfering with his repairs to that portion of the boardwalk or from interfering with access to the boardwalk through a gate Key proposed be installed in her fence by Key. On August 6, 2008, Key amended his complaint to add Baldwin County as a defendant.
 

 On July 9, 2009, a bench trial was held. Joey Dunley, an engineer for Baldwin County, testified at trial that the boardwalk had been in existence for approximately 100 years. Dunley had studied the history of the boardwalk in preparation for
 
 *280
 
 his testimony on behalf of the County at trial.
 

 John Brodbeck, an 83-year-old resident of Point Clear who was born and reared in the area, testified that the boardwalk had been in existence and used by the public for as long as he could remember. Brod-beck testified that he had used the boardwalk throughout his life and that, to his knowledge, neither he nor anyone else had ever asked for or obtained permission to walk on the boardwalk. According to Brodbeck, other than Allison’s recent closure of her portion of the boardwalk, no property owner along the boardwalk had ever attempted to close the boardwalk or to prevent members of the general public from using it.
 

 The trial transcript includes the following exchange from Brodbeck’s testimony:
 

 “Q [Allison’s counsel]: In your experience using the boardwalk, isn’t it true it was your understanding that you always had the consent or the permission of whoever owned the property to walk along there?
 

 “A [Brodbeck]: No, no.
 

 “Q: You thought you were going on it against the wishes of the landowner?
 

 “A: No, no. Most people along there invited you to walk the boardwalk, they were proud of it.
 

 “Q: That’s what I mean. The boardwalk was installed at the owners’ expense, correct?
 

 “A: Oh, yeah, yeah.
 

 “Q: They improved it and maintained it and encour—
 

 “A: But they did it for the public.
 

 “Q: Exactly. And they encouraged people to walk on it, correct?
 

 “A: Yeah.
 

 “Q: And you’re not saying that anyone other than the adjoining owner worked to improve the boardwalk, to build the boardwalk out of wood or whatever it was built out of?
 

 “A: Well, most people took enough pride in their property that they maintained it themselves.
 

 “Q: Right. You’re not aware of any instance where anyone else maintained it for them, are you?
 

 “A: Not right off, I haven’t been aware of it.”
 

 Key likewise testified at trial that members of the public used the boardwalk without asking for permission to do so. His testimony on this point is reflected in the following exchange:
 

 “Q [Allison’s counsel]: Is there anything more that could have been done by Ms. Allison or by her predecessors in title to make people think they were welcome to walk along the boardwalk in front of her property?
 

 “A [Key]: I don’t — Other than putting up a sign, you know, I mean, it was— There was never any question that people could walk there.
 

 “Q: It opened straight onto Zundel’s Lane, it was a paved, level — not paved, it was concrete, level sidewalk. I mean, there was no reason to think any owner was discouraging or in any way trying to discourage people from walking across it, was there?
 

 “A: No.”
 

 On January 7, 2010, the trial court entered a judgment in favor of Allison on all claims, finding that Key had failed to carry his burden of proving the existence of a private easement or a public easement either by dedication or by “public use of [the boardwalk] over a period of twenty years because the public’s use of the boardwalk was consensual and with the express or implied permission of ... Allison and her predecessors in title.” On January 26,
 
 *281
 
 2010, Key filed a notice of appeal to this Court.
 

 Standard of Review
 

 When evidence is presented ore tenus, the trial court is “ ‘uniquely] positioned] to directly observe the witnesses and to assess their demeanor and credibility.’ ”
 
 Ex parte T.V.,
 
 971 So.2d 1, 4 (Ala. 2007) (quoting
 
 Ex parte Fann,
 
 810 So.2d 631, 638 (Ala.2001)). Therefore, a presumption of correctness attaches to a trial court’s factual findings premised on conflicting ore tenus evidence.
 
 Ex parte J.E.,
 
 1 So.3d 1002, 1008 (Ala.2008). However, “ ‘[w]here the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.’ ”
 
 State v. Hill,
 
 690 So.2d 1201, 1203 (Ala.1996) (quoting
 
 Stiles v. Brown,
 
 380 So.2d 792, 794 (Ala.1980)). Because the evidence here was undisputed, the ore ten-us rule is inapplicable and our review is de novo.
 

 The trial court here made no findings of fact. When evidence is presented ore tenus and the trial court makes no express findings of fact, this Court will assume that the trial court made those findings necessary to support its judgment.
 
 Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A.,
 
 608 So.2d 375, 378 (Ala.1992) (citing
 
 Fitzner Pontiac-Buick-Cadillac, Inc. v. Perkins &
 
 As
 
 socs.,
 
 578 So.2d 1061 (Ala.1991)).
 

 We further note that “the ore
 
 tenus
 
 standard of review has no application to a trial court’s conclusions of law or its application of law to the facts; a trial court’s ruling on a question of law carries no presumption of correctness on appeal.”
 
 Ex parte J.E.,
 
 1 So.3d at 1008 (citing
 
 Ex parte Perkins,
 
 646 So.2d 46, 47 (Ala.1994), and
 
 Eubanks v. Hale,
 
 752 So.2d 1113, 1144-45 (Ala.1999)). This Court “‘review[s] the trial court’s conclusions of law and its application of law to the facts under the de novo standard of review.’ ”
 
 Id.
 
 (quoting
 
 Washington v. State,
 
 922 So.2d 145, 158 (Ala.Crim.App.2005)).
 

 Analysis
 

 A public prescriptive easement is created when the public, under a claim of right, adversely uses an open, defined roadway for an uninterrupted period of 20 years or more without objection or hindrance from the landowner.
 
 Osborn v. Champion Int’l Corp.,
 
 892 So.2d 882, 885 (Ala.2004);
 
 Newell v. Dempsey,
 
 219 Ala. 634, 634, 122 So. 881, 881-82 (1929);
 
 Locklin v. Tucker,
 
 208 Ala. 155, 155, 93 So. 896, 896-97 (1922). When such circumstances are shown, and the roadway lies across improved or reclaimed land, “ ‘a presumption of dedication or other appropriation to a public use arises. The burden is then on the landowner to show the user was permissive only, in recognition of his title and right to reclaim the possession.
 
 Ayers v. Stidham,
 
 260 Ala. 390, 71 So.2d 95 (1954).’ ”
 
 Osborn,
 
 892 So.2d at 885 (quoting
 
 Ford v. Alabama By-Prods. Corp.,
 
 392 So.2d 217, 218 (Ala.1980)).
 

 The boardwalk is an “open, defined roadway.”
 
 Cf. Davenport v. Cash,
 
 261 Ala. 380, 382, 74 So.2d 470, 470 (1950) (noting that, throughout various legal definitions of the terms “public road” and “highway,” “there seems to be running the general idea of a current way of public passage”). It crosses Allison’s backyard, which qualifies as improved or “reclaimed” land. According to the testimony of the county engineer for Baldwin County, who was familiar with the history of the boardwalk, the public had used the boardwalk for more than 100 years preceding the trial of this case. The evidence at trial indicated
 
 *282
 
 that, during that 100-year period, until Allison closed the gap in the fence, the public’s use has been without objection or hindrance from Allison or her predecessors in interest. Therefore, a presumption of dedication or other appropriation to a public use arises, and the burden shifted to Allison to overcome that presumption with evidence indicating that the public’s use of the boardwalk was “permissive only, in recognition of [her] title and right to reclaim the possession.”
 
 Osborn,
 
 892 So.2d at 885.
 

 Having thoroughly considered the evidence in the record in the light most favorable to the trial court’s judgment,
 
 see Transamerica, supra,
 
 we find
 
 no
 
 evidence from which the trial court could have inferred that, during the first 20 years the boardwalk existed, the use by the public was permissive. At most, the oldest record evidence of permissive use comes from 83-year-old John Brodbeck’s testimony of his childhood memories of using the boardwalk. Brodbeck testified that, from the days of his childhood, he and others never asked permission to use the boardwalk; Brodbeck also testified that the landowners along the boardwalk “invited” and “encouraged” the public to use the boardwalk.
 

 It is clear from the record that Brod-beck’s testimony as to the nature of the public’s use of the boardwalk does not date back beyond 80 years. Because the record contains no evidence as to the nature of the public’s use of the boardwalk for the first 20 years of existence, no evidence exists to overcome the presumption that, for the first 20 years of the public’s more-than-100-year use of the boardwalk, the public used the boardwalk adversely under a claim of right, without the permission of the landowners and without recognition of the landowner’s right to reclaim the property on which the boardwalk lay.
 
 See Osborn, supra
 
 (explaining the burden of proof in a case involving a public easement by prescription over reclaimed lands). Accordingly, the only conclusion that can be drawn from the evidence in the record in this case is that an easement by prescription was created during the first 20 years of the existence of the boardwalk.
 
 See Osborn, supra
 
 (explaining the elements and burden of proof for establishing an easement by prescription), and a presumption of dedication to public use arose. Allison presented no evidence refuting that presumption. Thus, the trial court’s judgment is due to be reversed.
 
 State v. Hill,
 
 690 So.2d at 1203. We note that Allison, Baldwin County, and Key are the only parties in this case. There are other landowners whose properties the boardwalk crosses and who are not parties to this case. We further note that those landowners could present evidence different from the evidence presented in this case with different results.
 

 Conclusion
 

 For the foregoing reasons, we reverse the judgment of the trial court, and we remand this case to the trial court for further proceedings consistent with this opinion, including a determination of the duty, if any, of Baldwin County to maintain the portion of the boardwalk determined here to be dedicated to the public use.
 

 REVERSED AND REMANDED.
 

 WOODALL, SMITH, BOLIN, and PARKER, JJ., concur.
 

 MURDOCK, J., concurs in the result.
 

 LYONS and STUART, JJ., recuse themselves.
 

 [1]
 

 . Only that portion of the boardwalk that crosses Allison's property is the subject of this action.