WELCH, Judge,
dissenting.
I believe that the circuit court erred when it denied Allison Carter Pickering’s motion to suppress; therefore, I respectfully dissent from the majority’s affir-mance of her conviction for chemical endangerment of a -child.- See, § 26-15-3.2(a)(1), Ala.Code 1975. I would reverse her conviction- and remand the case for further proceedings. •
*986 On February 3, 2014, Pickering filed a motion to suppress the results of drug tests performed on Pickering’s and her newborn child’s blood and/or urine by the Highlands Medical Center. The test results were positive for the presence of amphetamine and methamphetamine and were the basis for charging Pickering with chemical endangerment of her newborn child. Pickering argued in her motion that the blood and/or urine samples had been destroyed and that the destruction of this evidence prevented Pickering from obtaining her own independent tests on the samples. She requested a hearing at which the trial court could determine before trial whether the test results should be admitted at trial.
On February 19, 2014, a hearing on the motion to suppress was conducted. The entire hearing consisted of counsel’s arguments. The focus of the hearing was the effect of the destruction of the urine samples. Pickering did not dispute that the post-delivery tests on her and her baby’s urine samples were positive for amphetamine and methamphetamine. What Pickering contested was the destruction of the urine samples that left her unable to test the samples independently to prove that the results had been false-positive. Therefore, because the urine samples had been destroyed, she requested that the results of the hospital tests conducted on the urine be suppressed. At the conclusion of the hearing, the trial court instructed the parties to provide the court with copies of the caselaw they were relying on. On February 21, 2014, the State filed a written response to the motion to suppress. On February 26, 2014, Pickering filed an “Objection to the State’s Response to Defendant’s Motion to Suppress and Request for an Evidentiary hearing.” In this motion, Pickering asserted that the State, in its response, has presented “unverified facts and allegation that are not in evidence.” (C. 27.) On February 27, 2014, the State filed a response to Pickering’s objection. The State asserted that it had not attempted to testify but was expressing what it expected the evidence to show. Moreover, the State asserted that, “prior to the hearing on February 19, 2014, ... [defense counsel indicated that he] would stipulate to the facts.” (C. 29.) On February 28, 2014, Pickering filed a response to the State denying a stipulation to the facts and further asserting that “[t]he ONLY fact stipulated to by counsel for Defendant was [that] the hospital records in this matter would show a positive drug screen.” (C. 30; capitalization in original.) Pickering requested another evidentiary hearing on her motion to suppress. On May 5, 2014, the circuit court issued the following written order setting forth its findings of fact regarding the motion to suppress:
“The Defendant is charged with chemical endangerment of a child, pursuant to The Code of Alabama § 26-15-3.2(a)(1). The charge came after she gave birth to a child at Highlands Medical Center and both the mother’s and the child’s urine1 tested positive for methamphetamine. They each were tested pursuant to hospital policy; also pursuant to that same policy the urine samples were destroyed thirty days after the tests.
“No one requested that the urine samples be preserved prior to the destruction of the same. The Defendant now complains that the urine samples ought to have been preserved so that she could have them independently tested.
“Her motion to suppress was heard February 19, 2014. The Defendant was present with counsel and the State was represented by its Assistant District Attorney. The court heard the arguments of counsel and considered their written submissions.
*987 “In Scott v. State[, 163 So.3d 389 (Ala.Crim.App.2012),] the Alabama Court of Criminal Appeals considered whether electrical outlets ought to have been provided to a defendant for independent testing, a defendant charged and convicted of the capital murder of her autistic son by arson. Apparently the Scott defendant contended that the fire was electrical in origin; the State contended and proved to the jury that it was intentionally set. One or more of the outlets removed from the house fire scene were lost, destroyed or otherwise not produced to the Scott for inspection and testing. The court upheld Scott’s conviction and death sentence. The appellate court states this, in the pertinent part:
“‘[The Defendant] Scott next argues that she was precluded from presenting her .defense because,’she says, the State lost crucial evidence — two electrical outlets removed from [the deceased victim] Mason’s bedroom. Specifically, she argues that the circuit court erred in failing to suppress the testimony of Dr. Raphael Franco, a State expert in the field of electrical engineering and electricity, who testified that electricity was not the cause of the fire; that the court failed to apply the three-part test set out in Ex parte Gingo, 605 So.2d 1237 (Ala.1992): and that the State was responsible for the critical lost evidence that was not available to prove her theory of defense.
[[Image here]]
“.‘Scott relies on the Alabama Supreme Court’s decision in Ex parte Gingo to support her'argument. In discussing the Supreme Court’s decision in Gingo, this Court in Gurley v. State, 639 So.2d 557 (Ala.Crim.App.1993), stated:
“‘“In Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the police failed to refrigerate a sodomy victim’s semen-stained clothing. Therefore, the clothing could not be subjected to tests the results of which might have exonerated the accused. At trial, the prosecution presented evi- ■ dence that the victim had identified the accused as his assailant, but it did not introduce any evidence pertaining to the victim’s clothing in its case-in-chief.
“ ‘ “The United States Supreme Court held that ‘unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.’ 488 U.S. at 58, 109 S.Ct. at 337.” [Emphasis added by the undersigned judge.]
“ ‘ “We conclude that our . Supreme Court has adopted in theory, if not in name, a multi-factor balancing. test similar, to the one used by the Delaware court in Hammond [v. Delaware, 569 A.2d 81 (Del.1989),] to determine whether the State’s loss or destruction of evidence constitutes a due process violation in any given case. We also conclude that that balance will necessarily be drawn differently in every case because ‘fundamental fairness, as an element of due process, requires the State’s failure to preserve evidence that , could be favorable to the defendant “[t]o be evaluated in the context of the entire record.”’ Hammond, 569 A.2d at 87 (quoting United States v. Agurs, 427 U.S. 97, 112, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976))....
*988 “ ‘ “Since the decision in Ex parte Gingo, this court has employed an abbreviated ‘materiality and prejudice analysis:’ See Grissom v. State, 624 So.2d 706 (Ala.Cr.App.1993) (wherein this Court, before discussing the lack of bad faith, observed: “we are not prepared to say that the tape recording was so critical that the police’s destruction of the evidence rendered a fair trial impossible’)
“‘Gurley v. State 639 So.2d 567, 563-68 (Ala.Crim.App.1993).
“ ‘According to Gurley we must examine: (Í) the culpability of the State; (2) the materiality of the lost or destroyed evidence; and (3) the prejudice that the defendant suffered as a result of that loss.’
«
“In the case at Bar today, this court follows the direction of the Alabama Court of Criminal Appeals in making its analysis and looks similarly to determine whether the lost or destroyed object— the urine samples — prevents the Defendant from presenting a valid defense, using-this analysis, to-wit:
■ “(1) Culpability of the State
“There is no State culpability present. The samples were taken, analyzed and destroyed by the physician, by the hospital or its agents, a physician and a hospital selected by the Defendant herself. There is absolutely no state actor involved, at least as far as the court is informed. -The urine samples were not taken, analyzed nor destroyed by the State, by the police, or by any other State or law enforcement actor. ■
“(2) Materiality of the missing urine sample
“The court in Scott above, quoting the United States Supreme Court’s [California v.] Trombetta [, 467 U.S. 479 (1984),] decision, announced this materiality standard:
“ ‘To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. California v. Trombetta, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).
“In the instant case, Ms. Pickering’s urine samples apparently had no exculpatory value at all inasmuch as they tested positive for illegal substances when her physician and her hospital had them tested. The samples were inculpa-tory, certainly not exculpatory. Moreover, any exculpatory value those samples may have had could not have been apparent to the State before Ms. Pickering’s physician and Ms, Pickering’s hospital destroyed them. Ms. Pickering had the only means to obtain comparable samples of her own urine and that of her infant. She could have immediately requested that the same samples be tested again. She could have presented herself at any number of locations in this county which perform urinalysis drug testing and sought her own testing of her. own urine. She could have attended the shelter care hearing held in the Jackson County Juvenile Court two days after the birth where a court-appointed lawyer waited to help her — but she did not. She could have remained in the hospital and requested, re-testing or additional testing. She did not; rather she eloped from the hospital in the middle of th¿ night — most likely fleeing to avoid arrest.
“Therefore, [Pickering’s] motion to suppress fails under the three prongs of *989 the Trombetta court’s materiality analysis alone.
“(3) Prejudice to [Pickering]
“The evidence of the positive urine samples is prejudicial to [Pickering]. All adverse evidence is prejudicial or it would be irrelevant. Nonetheless, it is not so prejudicial that it should be excluded on any grounds presently before the court, much less on the ground that the urine samples were destroyed before they could be re- or independently tested.

“Conclusion:

“Ms. Pickering’s arguments fail on all three bases of analysis: culpability, materiality and prejudice.
“Ms. Pickering’s arguments further fail the test of common sense. It makes no sense to allow a defendant to fail a drug test, abscond from the hospital or other testing facility where that test was conducted and then complain that she had no opportunity to have the samples retested by another lab or had no opportunity to have other samples tested. Her own act of fleeing the hospital— again, the same hospital and the same physician selected by her — is the act that precluded additional or further testing.
“Upon due consideration of the arguments of counsel and the authorities cited by counsel, the motion to suppress is DENIED.
“The objection to the State’s post-hearing submission is DENIED and OVERRULED.
“The Defendant’s post-hearing motion for an evidentiary hearing is DENIED. The trial will be the evidentiary hearing and.the court may (emphasis on may) revisit the issue at that time and the jury certainly will consider the facts in reaching a decision.
1,1 The court was told that it was urine which was tested and uses the terminology selected by the attorneys.”
(C. 34-36.)
In denying the motion to suppress, the trial court states in its order that it addressed the three Gurley v. State 639 So.2d 557, 563-68 (Ala.Crim.App.1993), factors — (1) the culpability of the State; (2) the materiality of the lost or destroyed evidence; and (3) the prejudice that the defendant suffered as a result of that loss — based “[u]pon. due consideration of the arguments of counsel and the authorities cited by counsel.” (C. 36.) Thus, the trial court made the following findings of fact based on the State’s arguments without the presentation of any evidence: That there is no, culpability on the part of the State; that the samples were destroyed by the physician, by the hospital, or by its agents; that there was no state actor¡ involved in destroying the samples — “at least as far as the court is informed” .(C. 35); that .the urine samples were not destroyed by any law-enforcement actor; that any exculpatory value -the urine samples may have had could 'not .have been apparent to the State before the hospital destroyed them; that Pickering had the only means tó obtain comparable samples of- her own urine and that- of her infant; that Pickering éloped from the hospital in the middle of the night, most likely to avoid prosecution..
The standard of review for a ruling on a motion to suppress is as follows:
“In reviewing a trial court’s ruling on a motion to suppress, this Court reviews the trial court’s findings of fact under an abuse-of-discretion standard of review. ‘When evidence is presented ore tenus to the trial court, the court’s findings of fact based on that evidence are presumed to be correct,’ Ex parte Perkins, *990 646 So.2d 46, 47 (Ala.1994); ‘[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence,’ Bradley v. State, 494 So.2d 750, 761 (Ala.Crim.App.1985), aff'd, 494 So.2d 772 (Ala.1986); and we make ‘ “all the reasonable inferences and credibility choices supportive of the decision of the trial court.”’ Kennedy v. State, 640 So.2d 22, 26 (Ala.Crim.App.1993), quoting Bradley, 494 So.2d at 761. ‘[A]ny conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court-Absent a gross abuse of discretion, a trial court’s resolution of [such] conflicts] should not be reversed on appeal.’ Sheely v. State, 629 So.2d 23, 29 (Ala.Crim.App.1993) (citations omitted). However, ‘ “[w]here the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the [appellate] Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.”’ State v. Hill, 690 So.2d 1201, 1203 (Ala.1996), quoting Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980). ‘ “ ‘[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment.”” Ex parte Jackson, 886 So.2d 155, 159 (Ala.2004), quoting Hill, 690 So.2d at 1203, quoting in turn Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). A trial court’s ultimate legal, conclusion on a motion to suppress, based on a given set of facts is a question of law that is reviewed de novo on appeal. See State v. Smith, 785 So.2d 1169 (Ala.Crim.App.2000).”
State v. Hargett, 935 So.2d 1200, 1203-04 (Ala.Crim.App.2005).
Here, there can be no presumption that the trial court’s findings of facts were correct because no testimony or evidence was presented — i.e., no witnesses were called, no oaths administered, no testimony was presented, and no cross-examinations conducted. See, D.L.B. v. State, 941 So.2d 324, 325 (Ala.Crim.App.2006)(holding that there had been no probation revocation hearing where only counsel’s arguments were heard, no testimony was taken, and “the circuit court revoked D.L.B.’s probation, noting ‘that it was revoking D.L.B.’s probation based on the State’s representation.’ ”).
Here, the alleged findings of fact contained in the circuit court’s order denying the motion to suppress are not based on testimony or evidence presented at the hearing. The trial court’s findings of fact are nothing more than recitations of the State’s arguments and assertions about what the evidence would presumably show at trial. I believe the trial court abused its discretion, and I would reverse Pickering’s conviction and remand the case for further proceedings.