Antonio Fullenwilder appeals his February 10, 2005, conviction, following a guilty plea, for first-degree possession of marijuana, a violation of § 13A-12-213, Ala. Code 1975.[1] On February 10, 2005, he was *Page 900 
sentenced to three years' supervised probation. The court also fined Fullenwilder $1,000 pursuant to the Drug Demand Reduction Assessment Act, § 13A-12-280 et seq., Ala. Code 1975, ordered him to pay court costs, and ordered him to pay $100 to the crime victim's compensation fund. Before entering his guilty plea, Fullenwilder preserved for review the denial of his motion to suppress, in which he alleged that the police did not have a reasonable suspicion to conduct a stop pursuant to Terry v.Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). (Supp. R. 11-12.)
At the suppression hearing, Detective Tommy Buford of the Selma, Alabama, Police Department narcotics unit testified that on the night of August 29, 2003, he and several other officers, dressed in plain clothes and traveling in an unmarked van, were patrolling an area in East Selma, on Magazine Street. Buford testified that the police department had received numerous telephone calls on the witness hotline, from people he knew, reporting drug trafficking in the area. He stated, "Sometimes you can't even get through they have the roadway so cluttered. Cars can't get through. Traffic is in and out of there all the time of the night, early hour[s of the] morning." (R. 3.) Buford testified that, on that particular day, he had not received a call about any specific person, only general calls about drug activity, so the officers went to the area that night and conducted a routine check based on the complaints.
Buford testified that he observed a car illegally parked — facing oncoming traffic in front of a house. He testified that he had served search warrants at the house in the past and had seized crack cocaine and marijuana during those searches. Buford had previously arrested people in that house for selling controlled substances. Buford stated that individuals in the house were selling whiskey, beer, crack cocaine, and marijuana, and that that location had a reputation as a shot house. (R. 5, 7.) He further testified that two men walked out of the house toward the illegally parked car and got into the car. Fullenwilder got into the driver's seat.
Buford and the other officers approached the car in the unmarked van and stopped directly in front of Fullenwilder's vehicle. Fullenwilder put the car in gear and attempted to drive away. The officers drew their weapons, and Fullenwilder and the passenger got out of the vehicle. Fullenwilder and the passenger were questioned and patted down. The officers discovered crack cocaine and marijuana in Fullenwilder's possession, and crack cocaine in the passenger's possession. Fullenwilder was arrested and transported to the police station. Fullenwilder was not ticketed for the parking violation. (R. 7.)
On appeal, Fullenwilder asserts that the trial court erred in denying his motion to suppress. He argues that the drug evidence obtained when the police searched him was obtained illegally because, he says, the officers did not have reasonable suspicion of illegal conduct to conduct a stop pursuant to Terry v.Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Fullenwilder reserved the right to appeal the trial court's denial of his motion to suppress before he entered a guilty plea. (C. 31-35, Supp. R. 11-12.) At the suppression hearing, only Det. Buford testified, and his testimony was undisputed. Accordingly, we will review the trial court's decision denovo. State v. Thomas, 843 So.2d 834, 838-39
(Ala.Crim.App. 2002).
The United States Supreme Court in Terry v. Ohio,392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), held that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though *Page 901 
there is no probable cause to make an arrest." Although the resolution of each case involving the legality of what has come to be known as a "Terry stop" has turned on the specific facts of the case, some general rules regarding the legality of these stops have been developed. The United States Supreme Court has stated:
 "The Fourth Amendment applies to seizures of the person, including brief investigatory stops such as the stop of the vehicle here. Reid v. Georgia, 448 U.S. 438, 440 (1980); United States v. Brignoni-Ponce, [422 U.S. 873, 878
(1975)]; Dams v. Mississippi 394 U.S. 721
(1969); Terry v. Ohio, 392 U.S. 1, 16-19
(1968). An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. Brown v. Texas, 443 U.S. 47, 51 (1979); Delaware v. Prouse, 440 U.S. 648, 661
(1979); United States v. Brignoni-Ponce, supra, at 884; Adams v. Williams, 407 U.S. 143, 146-149 (1972); Terry v. Ohio, supra, at 16-19.
 "Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like `articulable reasons' and `founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances — the whole picture — must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. See, e.g., Brown v. Texas, supra, at 51; United States v. Brignoni-Ponce, supra, at 884.
 "The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions — inferences and deductions that might well elude an untrained person.
 "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain commonsense conclusions about human behavior; jurors as factfinders are permitted to do the same — and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
 "The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. Chief Justice Warren, speaking for the Court in Terry v. Ohio, supra, said that, `[t]his demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence.' Id., at 21, n. 18 (emphasis added). See also, Brown v. Texas, supra, at 51; Delaware v. Prouse, supra, at 661-663; United States v. Brignoni-Ponce, supra, at 884."
United States v. Cortez, 449 U.S. 411, 417-18,101 S.Ct. 690, 66 L.Ed.2d 621 *Page 902 
(1981) (footnote omitted) (some emphasis added).
The United States Supreme Court has recognized that a trained and experienced police officer can find meaning in conduct that might appear innocent to an untrained observer. E.g., Brownv. Texas, 443 U.S. 47, 52 n. 2, 99 S.Ct. 2637,61 L.Ed.2d 357 (1979), citing United States v. Brignoni-Ponce,422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975);Christensen v. United States, 104 U.S.App.D.C. 35, 36, 259 F.2d 192, 193 (1958). The United States Supreme Court has also recognized that an analysis of the propriety of an investigative stop must include consideration of the location where the investigative stop is made. In Illinois v. Wardlow,528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), Wardlow fled from police officers patrolling an area known for narcotics trafficking, and he was detained by officers. The Supreme Court held that the police had a reasonable suspicion that criminal activity was afoot and that the investigatory stop was permissible. The Supreme Court stated:
 "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Brown v. Texas, 443 U.S. 47 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a `high crime area' among the relevant contextual considerations in a Terry analysis. Adams v. Williams, 407 U.S. 143, 144, 147-48 (1972).
 "In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975); Florida v. Rodriguez, 469 U.S. 1, 6 (1984) (per curiam); United States v. Sokolow, [490 U.S. 1, 8-9 (1989)]. Headlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior. See United States v. Cortex, 449 U.S. 411, 418 (1981). We conclude Officer Nolan was justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further."
528 U.S. at 124-25, 120 S.Ct. 673 (emphasis added).
We note, first, that the case before us is an extremely close case. Our resolution of the issue would be easier if the record contained more facts, such as the time of night the stop occurred and whether Det. Buford's arrests of people in the shot house for criminal activities related to drugs and alcohol had occurred in the recent past. However, even without those facts, we find that the stop here was within the outer limits of a legal Terry stop and that the trial court correctly denied the motion to suppress. *Page 903 
Det. Buford testified that the police were conducting a routine check of the area based on calls made that day to a witness hotline about drug activity in the area. He had previously served warrants at a residence that was known as a shot house, and he had served warrants on and had arrested people at the house for selling controlled substances. Det. Buford's background knowledge is legitimately included in determining whether the police officers had a particularized suspicion that warranted further investigation. See Exparte Kelley, 870 So.2d 711, 725 (Ala. 2003). Fullenwilder's vehicle was illegally parked on the street in front of the shot house, and Fullenwilder and his companion walked out of the shot house. Fullenwilder began to drive away as the unmarked police van attempted to stop him. In light of the relevant legal standards discussed in this opinion, our independent review of the totality of the circumstances convinces us that the officers had a reasonable suspicion sufficient to authorize a warrantless investigatory stop of Fullenwilder. When the officers patted Fullenwilder's outer clothing, they discovered marijuana and crack cocaine.
The investigatory stop and the patdown were legally permissible, and the evidence was properly seized. The trial court correctly denied the motion to suppress and Fullenwilder is not entitled to any relief on his claim. Fullenwilder's conviction is affirmed.
AFFIRMED.
McMILLAN, P.J., and SHAW and WISE, JJ., concur. BASCHAB, J., concurs in the result.
[1] A charge of unlawful possession of a controlled substance, cocaine, was dismissed as part of the plea agreement.