18 So.3d 424 (2009)
STATE of Alabama
v.
Derendrick Laquinton LANDRUM.
CR-07-0646.
Court of Criminal Appeals of Alabama.
February 27, 2009.
*425 Troy King, atty. gen., and J. Thomas Leverette, Montgomery, for appellant.
Tiffany Bullard McCord, Montgomery, for appellee.
KELLUM, Judge.
Derendrick Laquinton Landrum was arrested and charged with unlawful possession of a controlled substance, a violation of § 13A-12-212(a)(1), Ala.Code 1975. Landrum filed a pretrial motion to suppress the evidence seized as the result of an investigatory stop, namely, a plastic bag containing what was later determined to be cocaine. Following an evidentiary hearing, the trial court granted Landrum's motion to suppress.[1] Pursuant to Rule 15.7, Ala. R.Crim. P., the State appeals the circuit court's ruling.
The evidence presented at the suppression hearing established the following: On December 21, 2006, at approximately 10:30 p.m., Cpl. D.K. Corkran was patrolling the Greater Washington Park area in Montgomery when he drove down Sixth Street and observed a Mercury Grand Marquis automobile occupied by two individuals parked on the side of the road next to a vacant lot. Cpl. Corkran observed the driver, later identified as Landrum, get out of the vehicle, leaving the driver's-side door open, walk to a nearby house, and knock on the door. Cpl. Corkran testified that Landrum returned to his vehicle after no one answered the door. Cpl. Corkran continued patrolling the area, returning to Sixth Street a few minutes later. As Cpl. Corkran drove down Sixth Street for the second time, he saw Landrum get out of his vehicle, leave the driver's side door open, and return to the same house. Cpl. Corkran testified that he then drove up to the vehicle and asked Landrum, who had returned to the vehicle, if anything was wrong with his vehicle. Cpl. Corkran testified that he found it suspicious that Landrum was parked next to a vacant lot. Cpl. Corkran explained that the area in which he saw Landrum was known as a high traffic drug area and that he suspected Landrum was involved in possible drug activity. Cpl. Corkran asked Landrum to come over to his patrol vehicle. After talking to Landrum briefly, Cpl. Corkran *426 decided to perform a pat-down search of Landrum for the officer's safety, then instructed Landrum to put his hands on the back of the patrol vehicle. According to Cpl. Corkran, Landrum reached into his pants pocket. Corporal Corkran instructed Landrum a second time to put his hands on the back of the patrol vehicle. As Landrum withdrew his hand from the pants pockets, Cpl. Corkran saw Landrum drop a plastic bag containing a white, powdery substance on the ground. On cross-examination, Corporal Corkran testified that he did not have evidence of Landrum committing a crime before he asked Landrum to step toward the patrol vehicle.
On appeal, the State contends that the circuit court erred by granting Landrum's motion to suppress. The State argues that, based on the circumstances, Cpl. Corkran had reasonable suspicion of illegal conduct to conduct a "stop and frisk" pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
"This Court reviews de novo a circuit court's decision on a motion to suppress evidence when the facts are not in dispute. See State v. Hill, 690 So.2d 1201, 1203 (Ala.1996); State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999)." State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App. 2004). In State v. Hill, 690 So.2d 1201 (Ala.1996), the trial court granted a motion to suppress following a hearing at which it heard only the testimony of one police officer. Regarding the applicable standard of review, the Alabama Supreme Court stated, in pertinent part, as follows:
"`Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts.' Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980) (citations omitted). The trial judge's ruling in this case was based upon his interpretation of the term `reasonable suspicion' as applied to an undisputed set of facts; the proper interpretation is a question of law."
State v. Hill, 690 So.2d at 1203-04.
The dissent relies on State v. Ivey, 709 So.2d 502 (Ala.Crim.App.1997), a case in which this court distinguished the Alabama Supreme Court's decision in Hill in order to apply the "clearly erroneous" standard of review. 709 So.2d at 505. In Ivey, this court explained the distinction, saying, "[i]n Hill, no facts were presented that conflicted with or undermined the testimony of the only witness; moreover, the defendant adopted in his brief the statement of facts set out in the State's brief." 709 So.2d at 505.
Judge Welch's dissent refers to and quotes several excerpts from the record in which the circuit court either commented on Cpl. Corkran's testimony or requested further explanation from Cpl. Corkran. The dissent suggests that the comments made and the questions asked by the trial court created the conflicts in Cpl. Corkran's testimony. Unlike the instant case, there is no indication in Ivey that the conflicts in the testimony of the police officer were created by direct questioning from the trial court. The conflicts referred to in Ivey pertained to ambiguities in the police officer's testimony and to a video introduced into evidence that appeared to contradict the police officer's testimony. Ivey, 709 So.2d at 505.
In the instant case, Cpl. Corkran was the sole witness to testify at the suppression hearing. Any conflicts in the evidence presented at the suppression hearing were a direct result of questioning by, or comments made by, the circuit court and are indicative of the circuit court's *427 ultimate ruling on the motion to suppress. Given the Alabama Supreme Court's holding in Hill, the only issue before this Court is whether the circuit court correctly applied the law to the facts presented at the suppression hearing, and we afford no presumption in favor of the circuit court's ruling.[2]
"The United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), held that `a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.' 392 U.S. at 22, 88 S.Ct. at 1880. The standard for allowing a Terry stop is whether there is a reasonable suspicion that `the person being stopped has engaged in some type of criminal activity.' Webb v. State, 500 So.2d 1280, 1281 (Ala.Crim.App.), cert. denied, 500 So.2d 1282 (Ala.1986)."
Ex parte Carpenter, 592 So.2d 627, 629 (Ala.1991).
"In reviewing reasonable suspicion determinations, courts must look at the `"totality of the circumstances"' to see whether the detaining officer had a `"particularized and objective basis"' for suspecting wrongdoing. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). `This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person.'" Arvizu, 534 U.S. at 273, 122 S.Ct. 744 (quoting Cortez, 449 U.S. at 418, 101 S.Ct. 690). A determination of probable cause should not be based on a `divide-and-conquer analysis' but should consider a series of acts, each of which is `perhaps innocent in itself,' together in determining whether they warrant further investigation. Terry v. Ohio, 392 U.S. at 22, 88 S.Ct. 1868."
State v. Odom, 872 So.2d 887, 890 (Ala. Crim.App.2003).
In United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), the United States Supreme Court explained:
"Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like `articulable reasons' and `founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances the whole picturemust be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. See, e.g., Brown v. Texas, ... 443 U.S. [47 (1979)]; United States v. Brignoni-Ponce, 422 U.S. [873,] 884 [(1975)].
449 U.S. at 417-18, 101 S.Ct. 690 (emphasis added).
One such basis for suspecting criminal activity is the location where the investigative stop is made. Fullenwilder *428 v. State, 946 So.2d 899 (Ala.Crim.App. 2006).
"`An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Brown v. Texas, 443 U.S. 47 (1979). But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a "high crime area" among the relevant contextual considerations in a Terry analysis. Adams v. Williams, 407 U.S. 143, 144, 147-48 (1972).'"
Fullenwilder, 946 So.2d at 902 (quoting Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)).
In the instant case, Cpl. Corkran saw Landrum at 10:30 p.m. in an area known as a "high traffic drug area." Landrum had parked his vehicle in front of a vacant lot on a dead-end street. On two occasions, within a short period of time, Cpl. Corkran saw Landrum get out of his vehicle, with the engine still running, knock on the door of a nearby house, and get back in his vehicle after no one answered the door. While we recognize that there is nothing inherently suspicious about the driver of a vehicle knocking on the door of a house while a passenger remains in the vehicle, with or without the engine running, those facts considered together as a whole, see United States v. Cortez, supra, with the time of evening that the event took place, the history of drug activity in the area, and the fact that Landrum repeated those actions, created sufficient cause to authorize Cpl. Corkran to approach Landrum and to investigate his behavior. Under the facts of this case, Cpl. Corkran was able to articulate a sufficiently particularized basis for a suspicion to justify investigating Landrum. United States v. Cortez, supra.
Based on the foregoing, we reverse the order of the circuit court and remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WINDOM, J., concurs.
WISE, P.J., concurs in the result.
WELCH, J., dissents, with opinion.
WELCH, Judge, dissenting.
Derendrick Laquinton Landrum was arrested for possession of a controlled substance, cocaine, a violation of § 13A-12-212, Ala.Code 1975. Landrum filed a motion to suppress, which was heard on December 19, 2007. The trial court granted the motion and the State timely appealed.
I disagree with the conclusion that the evidence before the trial court was essentially undisputed because any inconsistencies were created by the trial court's questions and comments and that, therefore, review on appeal was de novo. The main opinion states:
"In the instant case, Cpl. Corkran was the sole witness to testify at the suppression hearing. Any conflicts in the evidence presented at the suppression hearing were a direct result of questioning by, or comments made by, the circuit court and are indicative of the circuit court's ultimate ruling on the motion to suppress. Given the Alabama Supreme Court's holding in [State v.] Hill[, 690 So.2d 1201 (Ala.1996)], the only issue before this Court is whether the circuit court correctly applied the law to the facts presented at the suppression hearing, *429 and we afford no presumption in favor of the circuit court's ruling."
18 So.3d at 426-27.
In this case, although the trial court did not make written findings of fact, it is obvious that the trial court did not believe Cpl. Corkran's testimony, which contained numerous inconsistencies. Officer Corkran testified that he initially approached Landrum to ask him if he needed any assistance (Supp. R. 3) and that he was suspicious because Landrum was in "a high traffic drug area" (Supp. R. 3).[3] The trial court stated, "Well, now, I don't find your benevolent purpose to be quite accurate, though, because you went down there thinking he was involved in some kind of criminal activity." (Supp. R. 4.) When the officer testified that the suspicion that Landrum might have been involved in criminal activity arose in his mind first, the trial court stated, "Okay. So let's deal with that. I don't buy this business about you going down there to help him." (Supp. R. 4.)
The trial court further questioned Cpl. Corkran about his classification of the location as a high-crime area, and the court asked Cpl. Corkran about the crime statistics for the area. The officer stated that he did not know, specifically, the statistics for the area. The trial court asked, "Well, how can you call it a high crime area?" (Supp. R. 6.) Cpl. Corkran stated, "We have a lot of prostitution." (Supp. R. 6.) Cpl. Corkran also testified that he was aware of at least five houses in the area from which illegal drugs were sold, but he was unable to state how many arrests or convictions for illegal drug sales had come from that area. The trial court then stated, "[D]on't give me this moniker of high crime area. Okay? It doesn't mean much to me." (Supp. R. 7.)
On cross-examination, Cpl. Corkran testified that he stopped Landrum because he was suspicious that Landrum was attempting to purchase or sell drugs. Cpl. Corkran testified that Landrum parked his car next to a vacant lot on a dead-end street, and walked up to a residence. When the trial court asked Cpl. Corkran whether he had any information about the house Landrum was visiting, the officer testified, "I have no evidence that they were doing anything wrong in the house." (Supp. R. 13.) When the trial court asked Cpl. Corkran what evidence he had had at the time that Landrum was doing something wrong, the following exchange occurred:
"[Cpl. Corkran]: He walked up to the door.
"THE COURT: That's a crime in this city?
"[Cpl. Corkran]: No. Knocked on the door, couldn't get anybody, walked back to his car, I left, and he was coming back.
"THE COURT: Well, that's a crime in this city?
"[Cpl. Corkran]: He went up to the same door twice knowing nobody would answer the door.
"THE COURT: Well, maybe he was trying to arouse them. Maybe they were in there [a]sleep."
(Supp. R. 14.)
During redirect examination, the trial court stated that Cpl. Corkran had to have *430 a reasonable suspicion of criminal activity. The prosecutor stated that Cpl. Corkran had stated that, and the trial court replied, "I don't think he has." (Supp. R. 16.) The prosecutor then asked Cpl. Corkran whether Landrum might have been involved in any kind of theft of property at the house, and the officer replied, "Well, we do have a great deal of copper theft." (Supp. R. 16.) The trial court stated, "Well, you had no information at the time. Now, you told me first of all that you went to give him some assistance." (Supp. R. 16). The court noted that Cpl. Corkran had next relied on suspicions of Landrum's involvement in criminal activity. The trial court granted the motion to suppress.
The main opinion holds that de novo review of the trial court's ruling is required because Cpl. Corkran was the only witness and because the conflicts in his testimony were the direct result of questions or comments by the trial court. First, the fact that only one witness testified does not mandate de novo review. Second, I do not agree that the conflicts in Cpl. Corkran's testimony resulted only from questions or comments from the trial court.
In State v. Ivey, 709 So.2d 502 (Ala. Crim.App.1997), this Court considered whether a de novo standard of review should be applied when reviewing a trial court's order granting a motion to suppress, which followed a hearing at which only one witness testified. The Court stated:
"The findings of a trial court on a motion to suppress are binding on this court unless they are clearly erroneous. Simmons v. State, 428 So.2d 218 (Ala. Cr.App.1983).
"The State argues that this court should not apply this standard of review to the trial court's findings, but rather should conduct a de novo review because the evidence is not subject to material dispute because there was only one witness at the hearing and because the trial court did not make findings of fact. The State relies on State v. Hill, 690 So.2d 1201 (Ala.1996). However, Hill is distinguishable from this case. In Hill, no facts were presented that conflicted with or undermined the testimony of the only witness; moreover, the defendant adopted in his brief the statement of facts set out in the State's brief. Id. 690 So.2d at 1204. Hill recognized that where a trial court improperly applies the law to the facts or where the evidence is undisputed, no presumption of correctness exists as to the trial court's judgment. Id. 690 So.2d at 1203.
"In this case, the parties did not stipulate to the facts and they did not adopt the same version of facts in their briefs. Even where the matter rests upon the testimony of only one witness, the trier of fact is free to accept or reject the witness's statements. Where inferences to be drawn from the evidence are susceptible to more than one rational conclusion, the decision is for the factfinder. Willcutt v. State, 284 Ala. 547, 226 So.2d 328 (1969). This court will not interfere when the evidence tends to support the factual finding. Simmons v. State, 428 So.2d 218 (Ala.Cr.App.1983). Although only one witness testified, his testimony was not free of dispute."
709 So.2d at 505. The Court in Ivey applied the "clearly erroneous" standard of review rather than the de novo standard of review, and it upheld the trial court's ruling on the motion to suppress.
As was the case in Ivey, the testimony of the sole witness in this case was inconsistent. It is unclear from Cpl. Corkran's testimony the reason he relied on for stopping Landrum. He testified to at least four different reasons: to offer assistance *431 to Landrum; because he was suspicious that Landrum might have been involved in illegal drug activity; because Landrum was in a high-crime area where prostitution was a problem; because Landrum might have been involved in theft of copper pipe at the residence where he had twice knocked on the door. Thus, as in Ivey, the conflicts in the testimony of the sole witness made the evidence susceptible to more than one rational conclusion, and the factual and credibility determinations based on that testimony were for the trial judge.
Furthermore, I disagree with the assertion in the main opinion that the inconsistencies in Cpl. Corkran's testimony were the result only of the trial court's questions or comments. To the contrary, it was as a result of the prosecutor's questions that Cpl. Corkran testified about three of four different reasons he had for stopping Landrum: that he stopped to ask whether Landrum had a problem with his vehicle; that he was suspicious that Landrum had stopped next to a vacant lot; and that Landrum could have been involved in theft of copper from the property. In any case, the fact that some of the inconsistencies in Cpl. Corkran's testimony resulted from the trial court's questions and comments is irrelevant. The fact is that Cpl. Corkran's testimony was inconsistent. The inconsistencies in the testimony dictate that the "clearly erroneous" standard of review should be applied, no matter how that testimony was elicited.
Applying that standard of review, I would affirm the trial court's order. There is ample support in the record for the trial court's determination that Cpl. Corkran's Terry[4] stop was improper because it failed to establish any reasonable suspicion based on any specific, articulable facts that Landrum was engaged in, or was about to engage in, criminal activity. Brown v. Texas, 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). "In the absence of any basis for suspecting appellant of misconduct, the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference." Brown v. Texas, 443 U.S. at 52, 99 S.Ct. 2637.
Because I would affirm the judgment of the trial court, I respectfully dissent from the main opinion.
NOTES
[1] The circuit court did not make any written findings of fact when it granted Landrum's motion to suppress.
[2] It is well settled that this court is bound by the decisions of the Alabama Supreme Court, and this court "`is without authority to overrule the decisions of [that] court.'" Harris v. State, 2 So.3d 880, 902 (Ala.Crim.App.2007)(quoting Jones v. City of Huntsville, 288 Ala. 242, 244, 259 So.2d 288, 290 (1972)). See also § 12-3-16, Ala.Code 1975.
[3] The transcript of the suppression hearing is in the supplemental record, and the pages of that transcript are unnumbered. The State, in its brief, noted that it had numbered the pages beginning with the title page of the transcript, which it designated page 1, and then had numbered the pages consecutively through page 17, the certificate of completion. For purposes of clarity in this dissent, I will use the same page numbering. Pages of the suppression hearing will be designated "(Supp. R.)" and will be followed by the relevant page number or numbers.
[4] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).